Hillsborough
No. 87-110

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL MACMANUS

December 31, 1987

*Stephen E. Merrill*, attorney general (*Gregory W. Swope*, senior assistant attorney general, on the brief), by brief for the State.

*James E. Duggan*, appellate defender, of Concord, by brief for the defendant.

BATCHELDER, J. The defendant was convicted after a jury trial in Superior Court (*Hollman*, J.) of second degree assault, RSA 631:2, IV, and was sentenced to 3 1/2 to 7 years in the State Prison. The sole issue on appeal is whether the defendant's constitutional rights to due process and to present all favorable proofs under part I, article 15 of the New Hampshire Constitution were violated by the State's failure to provide transactional immunity to a defense witness. For the reasons that follow, we affirm.

On the night of March 1, 1986, the Manchester police received information that the defendant had assaulted his infant daughter. Tammy Oxley, the victim's mother, reported that she saw the defendant kick the child twice in the face with his work boots while the three were in their apartment. On the basis of the mother's statements and other information, the police subsequently arrested the defendant at the home of his foster father. The following morning, the defendant agreed to make a statement and told the police, "I don't really remember doing it, but once I realized what I had done, I didn't know why I did it." He stated further, "I remember kicking her once. I do remember kicking her in the face once but only once." When asked why he had hurt his daughter, he indicated that he was angry at Oxley, but that he "should not have taken it out on [the child]."

Approximately two months later, Oxley told an assistant county attorney that she had seen the defendant kick the child but did not want him to go to prison. The prosecution was prepared to show that Oxley had said, on as many as ten different occasions, that she had witnessed the defendant kick the child. However, only a few days after her conversation with the assistant prosecutor, Oxley

informed the Manchester police that her original statement was untrue. She told the police that, because the child was behind a doorway in the apartment, she had not actually seen the assault. She confessed that she had fabricated that part of the original story because she was angry at the defendant and wanted to get him in trouble. For this recantation, the police threatened to charge Oxley with filing a false report of a crime. See RSA 641:4.

At a pretrial deposition on September 2, 1986, Oxley refused to answer questions concerning the assault, invoking her fifth amendment privilege to be free from compelled self-incrimination. The basis for the exercise of the privilege was the threat of prosecution for the false reporting of a crime. The next day, the defendant moved to compel the State to grant immunity to Oxley, as her testimony would be crucial to his defense. The State offered use immunity, but Oxley refused, claiming she was entitled to transactional immunity under RSA 516:34. On January 12, 1987, the first day of trial, the defendant filed a written motion seeking dismissal of the charges on due process grounds relating to the State's failure to provide Oxley with transactional immunity. The trial court denied the motion in a written opinion, and, upon conviction, this appeal followed.

The defendant argues that his rights to due process and to present all proofs favorable to his defense, N.H. CONST. pt. I, art. 15, were violated by the State's failure to provide a substantial justification for denying transactional immunity to Oxley. He challenges as unfounded the State's concern that had it provided Oxley with transactional immunity, it would have permitted her to lie with impunity. Although she could not have been prosecuted for filing the false report, the defendant argues, she would still have been liable for perjury. Moreover, he maintains that Oxley's testimony was crucial to his defense in that she would have corroborated his testimony that he was drunk at the time of the incident and that a physical struggle had occurred with Oxley. He argues further that Oxley's subsequent recantation was favorable to his defense.

The State denies that the defendant was deprived of these constitutional guarantees. The State argues that Oxley's testimony would not have been directly exculpatory and that, moreover, it would have been reconcilable with the State's version of the events. See generally State v. Farrow, 118 N.H. 296, 306, 386 A.2d 808, 814 (1978) (standards under which due process addressed).

It is well-settled that a defendant has no constitutional right to have immunity conferred upon a defense witness who exercises her privilege against self-incrimination. *Id.* at 305–06, 386 A.2d at 814; *State v. Linsky,* 117 N.H. 866, 884, 379 A.2d 813, 824 (1977). "However, situations could arise in which to deny immunization from prosecution would deprive a defendant of due process on the facts of his case." *Farrow supra.*

The defendant challenges only the denial of immunity and not the propriety of the trial court's recognition of the witness' fifth amendment privilege. Therefore, to the extent that the defendant relies on our holdings in *State v. Lavallee,* 119 N.H. 207, 210–11, 400 A.2d 480, 482 (1979) and *State v. Richards,* 129 N.H. 669, 531 A.2d 338 (1987), that reliance is misplaced.

On the facts of this case, we do not believe that the defendant was denied his article 15 rights by the State's refusal to grant transactional immunity to Oxley. Her testimony would not have directly exculpated the defendant. *Farrow supra.* It is assumed that Oxley would have testified in accordance with her most recent version of the events; *i.e.,* that she did not actually see the defendant kick the child because the child was behind a doorway. However, the defendant does not suggest that Oxley would state that the defendant did not kick the child, nor that she would offer an alternative explanation concerning the source of the child's injuries. For similar reasons, Oxley's statement is reconcilable with the State's version of the events surrounding the assault. *See Farrow,* 118 N.H. at 306, 386 A.2d at 814.

The defendant argues further that Oxley's testimony was critical to corroborating his own account concerning his intoxication and that a physical struggle occurred at the time of the assault. The record indicates, however, that his foster father's testimony partly clarified the intoxication issue for the court. More importantly, we do not believe that the testimony sought by the defendant from Oxley would have prevented his conviction, especially in light of his own admissions. *See id.*

Finally, we note that both the trial court and the State took great pains to assure that the defendant received a fair trial and to minimize any possible prejudice to him by Oxley's absence. The State agreed to permit the defendant to testify without using his prior convictions to impeach him. *See* N.H. R. Ev. 609. Moreover, the trial court excluded evidence of Oxley's hearsay declarations that she had seen the defendant commit the assault, even though the trial court felt they would have been admissible under a number of exceptions to the hearsay rule. *See, e.g.,* N.H. Rs. Ev.

803(2) (excited utterance) and 803(4) (statements for purposes of medical diagnosis or treatment). Based on the foregoing considerations, we hold that the guarantees of part I, article 15 of our State Constitution did not require the State to grant the transactional immunity claimed by the defendant in his appeal.

*Affirmed.*

All concurred.