Hillsborough
No. 89-163

### THE STATE OF NEW HAMPSHIRE

v.

### FABIO MONSALVE

May 24, 1990

*John P. Arnold,* attorney general (*William H. Lyons,* assistant attorney general, on the brief and orally), for the State.

*W. Kirk Abbott, Jr.*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J.  Having been convicted in the Superior Court (*Groff*, J.) of possessing a narcotic drug with intent to sell, RSA 318-B:2, I, the defendant argues on appeal that he was denied State due process when the court allowed the trial to proceed despite the State's refusal to take steps to obtain immunity for a defense witness maintaining his right to silence, and that the court erroneously admitted hearsay, implicating State and federal rights to confrontation, when it allowed a police officer to describe an agreement with the same witness. We affirm.

On January 14, 1988, police officers of the Attorney General's Drug Task Force assigned to Nashua arrested one Coelho for sale of a narcotic and for conspiracy to engage in a separate sale of one kilogram of cocaine, although the sale had not taken place as expected. After the arrest, the director of the task force, James Norris, agreed to drop both charges if Coelho would produce the kilo of cocaine and his "source." Following some telephone calls by Coelho and Norris to a third person in Massachusetts, the defendant, Fabio Monsalve, arrived in Nashua by car with a companion named Greenwood, who was holding a locked metal box. After conversing with an undercover police officer, the defendant produced the key to the box, from which 954 grams of cocaine were removed. The defendant's arrest and prosecution followed.

At trial he raised the defense of entrapment, in support of which he claims to have sought Coelho's testimony. When the latter remained silent in the exercise of his privilege against compelled self-incrimination, the defendant requested the court to order the State to "grant" the witness transactional immunity, following which the testimony could have been compelled. In effect, that is, the defendant asked the court to order the State to choose between requesting the court to require the witness to testify subject to the consequences provided by RSA 516:34 or suffering dismissal of the indictment. The trial court denied the request. Before us, the defendant raises no claim of error in the court's recognition of Coelho's invocation of the privilege against compelled self-incrimination, but he argues that the refusal to order the State to choose between dismissal and a request to compel testimony under RSA 516:34 denied him due process as guaranteed by part I, article 15, of the State Constitution.

■ State constitutional standards for reviewing defense requests for what are colloquially called grants of immunity to defense witnesses have been recognized for more than a decade. Although a

defendant has no *per se* right to obtain a potentially immunizing order, *see State v. MacManus*, 130 N.H. 256, 259, 536 A.2d 203, 204 (1987), the court has recognized that prosecution without such an order can deny due process under some circumstances, *see State v. Farrow*, 118 N.H. 296, 306, 386 A.2d 808, 814 (1978). No such violation will be recognized, however, without a showing by the defendant that the testimony sought would be directly exculpatory or would present a highly material variance from the tenor of the State's evidence. *Id.; see MacManus supra.*

■ These standards are fatal to the defendant's claim. Quite simply, we have no inkling of whether Coelho would have testified for the defendant's benefit or of what he would have said. The defendant apparently hoped that Coelho would have supported the entrapment defense, but that possibility was remote at best. The record indicates that Coelho and the defendant did not speak together in the period between their respective arrests, and the only specific point about which the record gives any clear indication of the defendant's desire to examine Coelho goes to the defendant's status as Coelho's "source." Perhaps the defendant reasoned that his claim of entrapment was less plausible if he was understood to be the "source." There is, however, no reason to believe that Coelho would have conceded that the defendant was not his source for the cocaine, and no reason to regard the issue as anything but trivial, in light of the evidence that the defendant unlocked the box from which the cocaine was actually produced in Nashua. There having been, therefore, no showing that Coelho would have supplied directly exculpatory evidence or any material impeachment, the trial court correctly denied the so-called immunity request.

■ The defendant's second assignment of error follows his unsuccessful objection to Norris's testimony that his "understanding was that if Mr. Coelho could produce the kilo of cocaine and the source of that cocaine, then the charges that the State had against him would be dropped." We think the defendant is correct that Norris's statement of "understanding" implied that he and Coelho had come to a meeting of minds about the terms on which the charges would be dropped, one term being that Coelho would produce a person who would be identified thereby as Coelho's "source" for the kilo. The hearsay character of this latter implication of fact was not, as the State argues, avoided by the admission of Norris's statement for a limited purpose, since no limitation was apparent, and the statement must be treated as having been offered for its

truth as a means of describing the defendant as Coelho's "source." *See* N.H. RS. EV. 801(c), 802; *cf. State v. Dube*, 130 N.H. 770, 772, 547 A.2d 283, 284 (1988) (statement outside hearsay rule if not offered for truth). The error of its admission, however, whether it be treated as a violation of the hearsay rule or of the defendant's State or federal rights to confrontation, *see* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI, was harmless beyond a reasonable doubt. *See State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976).

We have already indicated that the identification of the defendant as Coelho's "source" is a matter more of verbal nicety than of evidentiary importance, in view of the uncontradicted testimony that the defendant appeared in Nashua with the key that opened the container of cocaine. Two other items of evidence, however, reduced the significance of the "source" characterization even further.

In cross-examining a police witness, defense counsel elicited information that Coelho was known to be a "large-scale trafficker in cocaine." Counsel then asked the witness if he had known who the defendant was at the time Coelho and Norris made the calls to Massachusetts. The answer was, "[Coelho] on a number of occasions, excuse me, referred to two bosses he had. One was out of Massachusetts; another was a Columbian out of Florida." Shortly thereafter the same witness suggested that the defendant was Coelho's "Columbian . . . boss in Florida," and the defendant was later quoted by a different witness as saying he had travelled to Massachusetts from Florida. Calling the defendant a "source" is pretty mild, compared with referring to him as the Columbian boss of a substantial drug dealer.

The second comparison rendering the "source" remark unimportant is with the evidence of the defendant's confession. The jury heard a police officer testify that the defendant admitted, in Spanish, that he had travelled from Florida to Boston, where he had purchased a kilogram of cocaine for $14,000. He described how he had delivered it to Coelho's house in Lowell, Massachusetts, with the intention of selling it to Coelho for $17,500, to be obtained "after the deal in Nashua went down." With this evidence in the record, it hardly mattered whether Coelho had or had not identified the defendant as his "source," and it can be said beyond any reasonable doubt that the latter hearsay did not affect the verdict.

*Affirmed.*

All concurred.