THE STATE OF NEW HAMPSHIRE

v.

STEVEN ROY

December 6, 1995

*Jeffrey R. Howard,* attorney general (*Michael D. Ramsdell,* senior assistant attorney general, on the brief and orally), for the State.

*Joachim Barth,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

*Steven Roy,* by brief, *pro se.*

JOHNSON, J. The defendant, Steven Roy, appeals a jury verdict finding him guilty of first degree murder in the killing of Joanna Kozak. RSA 630:1-a, I(a) (1986). He argues that the Superior Court

(*McHugh*, J.) erred in: (1) refusing to order the State to request use immunity for a potential defense witness, *see* RSA 516:34 (Supp. 1994); and (2) denying his motion for a mistrial after the State questioned its lead investigator regarding statements of a co-defendant that the trial court had previously ruled inadmissible. We affirm.

On June 27, 1992, Joanna Kozak left her residence in Fremont to go for a dirt bike ride with the defendant. She never returned. At the time of her death, Kozak shared the residence with, among others, the defendant and Maria Zarate, the mother of two of the defendant's children. When Kozak failed to return from the dirt bike ride, the defendant told Zarate that Kozak, then a fugitive from justice, had packed her belongings and left the residence permanently.

Weeks later, the defendant confided to Zarate that on June 27, 1992, he had bludgeoned Kozak to death. He also stated that he had buried her body in an isolated cemetery and disposed of her belongings with the assistance of C.J. Kelley.

On October 10, 1992, Zarate decided to permanently leave the Fremont residence. While waiting at the Manchester Airport, she made an anonymous telephone call to the Epping Police Department informing them that "a crime had been committed" at the Scribner Cemetery in Raymond. In November 1992, Zarate was interviewed by the FBI. As a result, Kozak's body was discovered on December 10, 1992, by the New Hampshire State Police.

On March 16, 1993, C.J. Kelley gave a tape recorded statement to the New Hampshire State Police. C.J. Kelley stated that the defendant had killed Kozak, and admitted that he helped the defendant bury the body. He was subsequently indicted for his role in assisting the defendant to conceal Kozak's murder. On April 12, 1993, the defendant was arrested and charged with first degree murder. Zarate was the State's lead witness.

The issues on appeal concern C.J. Kelley's statement to investigators. The defense had hoped to call C.J. Kelley as a witness, expecting to use his testimony to contradict that of Zarate. Prior to trial, C.J. Kelley asserted his fifth amendment privilege against self incrimination and refused to testify. After the State denied the defendant's request that C.J. Kelley be given immunity for his testimony, the defendant moved for an order requiring the State to request immunity for C.J. Kelley under RSA 516:34. The court denied the motion.

The State subsequently moved to exclude from evidence the statement that C.J. Kelley had given to investigators. The motion

was granted by the trial court. C.J. Kelley's involvement, however, was not kept from the jury. The main defense theory was that Zarate and C.J. Kelley had murdered Kozak and later implicated the defendant. In its opening statement, the defense referred to C.J. Kelley's presence in the household and role in the murder numerous times.

On cross-examination of Detective David Kelley of the New Hampshire State Police, the defense elicited testimony that he had interviewed C.J. Kelley for over four hours. Immediately on redirect, the State asked the following two questions which form the basis of the second issue on appeal:

> Q. Mr. Kelley, C.J. Kelley's been indicted for helping Steven Roy bury the body of Joanna Kozak, hasn't he?
> A. Yes, he has.
> Q. And he admitted to you that he helped bury the body, came to the cemet[e]ry and helped bury the body during that interview?

Defense counsel immediately objected and moved for a mistrial. Given the late hour, the trial court ruled that it would consider the request at a hearing the following morning. The trial court gave a brief curative instruction and excused the jury. When the jury reconvened the following Monday, the court gave a lengthy curative instruction, and the trial resumed. The defendant was subsequently convicted of first degree murder.

## I. Defense Witness Immunity

The defendant argues that the trial court's failure to compel the State to request use immunity for C.J. Kelley under RSA 516:34 violated his rights under the due process clause of both part I, article 15 of the New Hampshire Constitution and the fifth amendment to the Federal Constitution.

We base our decision on the New Hampshire Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), and cite federal law only to aid our analysis. *See State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Since we conclude that federal law affords no additional protection, *cf. United States v. Drape*, 668 F.2d 22, 26-27 (1st Cir. 1982); *State v. MacManus*, 130 N.H. 256, 259, 536 A.2d 203, 204 (1987), we make no separate federal analysis. *See Ball*, 124 N.H. at 232, 471 A.2d at 351.

As a preliminary matter, we note that New Hampshire's immunity statute, RSA 516:34, was amended in July 1993. It vests with the State the power to request that a witness, who has asserted

his or her privilege against self incrimination, be ordered to testify in exchange for a grant of *use immunity* where the testimony is "necessary to the public interest." Previously RSA 516:34 gave the State the power to compel testimony in exchange for *transactional immunity.* RSA 516:34 (1974) (amended 1993). Both versions vest the power to request an order compelling testimony solely with the State.

■ With respect to transactional immunity, we have held that a "defendant has no *per se* right" to have a defense witness immunized. *State v. Monsalve,* 133 N.H. 268, 270, 574 A.2d 1384, 1385 (1990). Acknowledging that use immunity may be less burdensome to the State because it does not completely foreclose prosecution of the immunized witness, *see* 3 C. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 363, at 230-33 (13th ed. 1991), we hold that the due process analysis under the new statute is the same. *See, e.g., United States v. Turkish,* 623 F.2d 769 (2d Cir. 1980), *cert. denied,* 449 U.S. 1077 (1981) (majority of courts addressing identical federal use immunity statute have rejected claims for defense witness immunity except in unusual circumstances). It remains true that "[u]nder the immunity presently available, a trial court does not have the power to grant immunity on its own." *State v. Linsky,* 117 N.H. 866, 884, 379 A.2d 813, 824 (1977); *see, e.g., State v. Hamlin,* 499 A.2d 45, 52 (Vt. 1985).

It is true that under narrow circumstances where the defendant shows that "the testimony sought would be directly exculpatory or would present a highly material variance from the tenor of the State's evidence," *Monsalve,* 133 N.H. at 270, 574 A.2d at 1385, failure to immunize a witness may have due process implications. *See also State v. Farrow,* 118 N.H. 296, 305-06, 386 A.2d 808, 814 (1978) (no due process violation if defense witness cannot directly exculpate defendant and can only cast doubt on State witness); TORCIA, *supra* at 223-29 (although prosecutor has prerogative to grant immunity, prosecutor may not be compelled to exercise such prerogative absent due process violation). In applying the law to the facts of this case, we find these standards are fatal to the defendant's claim. *Monsalve,* 133 N.H. at 270, 574 A.2d at 1385. C.J. Kelley's testimony would neither directly exculpate the defendant nor vary significantly from the testimony of the State's main witness, Zarate. In fact, his testimony would be highly prejudicial and would directly inculpate the defendant. Like Zarate, C.J. Kelley told investigators that after the defendant murdered Kozak, Kelley helped bury the body and assisted with concealing the crime. He also stated to police that the defendant removed all of Kozak's

fingertips and threw pepper on her grave to discourage animals from digging up her remains. We agree with the trial court that "while there are minor variances between Kelly's [*sic*] and Zarate's statements with respect to . . . temporal matters, these variances do not rise to the level of 'highly material variances.'" While the ability to cast doubt on credibility of a key witness is important, many of the inconsistencies in Zarate's statements were brought out on cross-examination, as were her character flaws and alleged motive to kill Kozak.

■ The defendant, in his *pro se* brief, argues that the failure to immunize C.J. Kelley violates his State constitutional right to present all favorable proofs, N.H. CONST. part I, art. 15. The defendant also argues on appeal that the State *is required* by the compulsory process clause of the Federal Constitution to grant use immunity to a co-defendant. The compulsory process clause, however, gives a defendant the right to produce witnesses, not their testimony, and part I, article 15 of the New Hampshire Constitution gives no further guarantee that a witness will testify. *State v. Taylor*, 118 N.H. 859, 861, 395 A.2d 1239, 1240-41 (1978); *see, e.g., Turkish*, 623 F.2d at 774 (the compulsory process clause does not require prosecutors to immunize defense witnesses); *see also MacManus*, 130 N.H. at 259, 536 A.2d at 204; 2 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 783, at 186 (2d ed. 1991). Therefore, the defendant's right to present all proofs favorable does not encompass the right to compel the State to request immunity for C.J. Kelley under RSA 516:34.

## II. Mistrial

■ The defendant argues that the trial court erred in refusing to grant a mistrial after the prosecution questioned its lead investigator regarding inadmissible statements made by C.J. Kelley to police. Assuming, without deciding, that the unanswered question amounted to "evidence,"

> [i]t does not necessarily follow, however, that the introduction of this evidence caused sufficient prejudice to the defendant to require that the proceedings be stopped. To justify a mistrial, prejudicial testimony must be more than inadmissible, it must constitute an irreparable injustice that cannot be cured by jury instructions. Because of the trial court's optimal vantage point for measuring prejudicial effect, it is within its discretion to decide whether a mistrial or other remedial action is necessary. Absent an

abuse of that discretion, we will not overturn the trial court's decision.

*State v. Ellison*, 135 N.H. 1, 4, 599 A.2d 477, 479-80 (1991) (quotations and citations omitted); *see, e.g., State v. Degre*, 137 N.H. 512, 513-14, 629 A.2d 818, 819 (1993). The defendant argues that the question caused irreparable harm because it implied that C.J. Kelley gave a statement to investigators, thereby bolstering Zarate's credibility and establishing a direct link between the defendant and C.J. Kelley. We find no irreparable harm, however, as defense counsel's opening remarks, combined with its cross-examination of key witnesses, had already created the impression that C.J. Kelley stated that he helped the defendant bury the body and that his statement to police corroborated Zarate's testimony. During the defense's opening statement, the jury was told four times that C.J. Kelley along with Zarate had accused the defendant of killing Kozak. In particular, the defense stated:

> Certainly they [Zarate and Kelley] acted together when they disposed of her body and then concocted an alibi about where they were.

> Now, the State has presented a very tidy story to you, . . . Steve killed her at the Scribner Cemet[e]ry, Steve called C.J., C.J. came out and buried her at the Scribner Cemet[e]ry. . . . This story is from Maria Zarate and C.J. Kelley.

The defense's cross-examination of Detective Kelley further linked the two statements when counsel wrote on an easel in full view of the jury:

12/16/92 - Maria Zarate interview
3/16/93 - C.J. Kelley interview
4/12/93 - Roy arrested

Therefore, we find no abuse of discretion on the part of the trial court in refusing to grant a mistrial.

Because we find that the defendant was not unduly prejudiced when the State asked the improper question, it is not necessary to review the defendant's argument that there was gross negligence on the part of the State in asking the offensive question. *See State v. Bujnowski*, 130 N.H. 1, 5, 532 A.2d 1385, 1386 (1987).

*Affirmed.*

BRODERICK, J., did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all who sat concurred.