NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
Case No. 2024-0066
Citation: State v. Zarella, 2025 N.H. 20


THE STATE OF NEW HAMPSHIRE

v.

GENE L. ZARELLA

Argued: November 7, 2024
Opinion Issued: May 1, 2025

Nixon Peabody LLP, of Manchester (David A. Vicinanzo, W. Daniel Deane, Nathan P. Warecki, and Allison K. Regan on the brief, and David A. Vicinanzo orally), for the complainant.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Anthony J. Galdieri and Sam M. Gonyea, assistant attorney general, on the brief, and Anthony J. Galdieri orally), for the State.

Shaheen & Gordon, P.A., of Concord (William E. Christie and Lauren M. Breda on the brief, and William E. Christie orally), for the defendant.

Sulloway & Hollis, P.L.L.C., of Concord (Robert L. Best and Sarah S. Murdough on the brief), for the New Hampshire Community Behavioral Health Association, as amicus curiae.

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Hilary H. Rheaume on the brief), for National Crime Victim Law Institute, New Hampshire Coalition Against Domestic and Sexual Violence, Danu Center's Confidentiality Institute, National Network to End Domestic Violence, and National Alliance to End Sexual Violence, as amici curiae.

Wadleigh, Starr & Peters PLLC, of Manchester (Jeffrey D. Odland and Michael G. Eaton on the brief), for the New Hampshire Association of Criminal Defense Lawyers, as amicus curiae.

DONOVAN, J.

[¶1] The complainant, K.R., appeals an order of the Superior Court (Ignatius, J.) denying her motion to quash the production of her counseling and mental health records for in camera review. This interlocutory appeal presents the following questions:

1. Does the constitutional right of an individual "to live free from governmental intrusion in private or personal information," N.H. Const. Part I, Art. 2-B change the test applicable to disclosure of an individual's therapeutic, privileged mental health or sexual assault counseling records for in camera review and, ultimately, to a criminal defendant or does [State v. Gagne, 136 N.H. 101 (1992),] remain the applicable test?

2. If the answer to question 1 is yes, and the constitutional amendment changes the applicable test, then what is the applicable test?

[¶2] We conclude that Part I, Article 2-b of the State Constitution abrogates our holding in State v. Cressey, 137 N.H. 402, 413 (1993), which applied Gagne to records held by private organizations. We further conclude that to obtain in camera review and disclosure of confidential or privileged records held by private organizations, the defendant must follow the procedures outlined in RSA 173-C:5 (2022) or, for records to which other

2

statutory privileges apply, demonstrate an essential need for the records. Accordingly, we vacate the trial court's order and remand.

## I.    Facts

[¶3] We accept the statement of the case and facts as presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary. See In the Matter of Liquidation of Home Ins. Co., 175 N.H. 363, 364 (2022). The defendant, Gene L. Zarella, is charged with four counts of aggravated felonious sexual assault. See RSA 632-A:2, I(j), I(l), II (Supp. 2024). Following his indictment, the defendant filed motions, to which the State either assented or did not object, seeking production of the complainant's confidential counseling and hospitalization records for in camera review by the trial court. The defendant also sought records from a 2009 New Hampshire Division for Children, Youth and Families (DCYF) abuse and neglect investigation involving prior allegations made by the complainant against the defendant. The Superior Court (Leonard, J.) granted the motions and ordered production of the records. The trial court then reviewed the records and found them to be discoverable "under the applicable standards."

[¶4] The defendant subsequently moved for in camera review of additional records. These requests sought information pertaining to the complainant's treatment from a number of private counseling, mental health, and medical care providers between 2009 and the present. The defendant argued, among other things, that "there is a reasonable probability that these records contain additional undiscovered statements relative to [the complainant's] allegations." Further, he asserted that statements made by the complainant "in counseling about other claims of sexual abuse are discoverable because these claims may either be demonstrably false or they may demonstrate that [the complainant] is conflating another act of abuse and claiming [the defendant] committed [acts of abuse] when someone else did." The trial court, noting the lack of objection by the State, granted the defendant's motion and issued orders for the production of the requested records for in camera review.

[¶5] The complainant, joined by one of the counseling providers whose records the defendant sought (collectively, the intervenors), thereafter moved to intervene and quash the orders for production. The intervenors asserted that, because "[t]he records pertain to counseling, medical care and therapy" provided to the complainant, "the privileges recognized in RSA 173-C, RSA 329-B:26, RSA 330-A:32, and New Hampshire Rule of Evidence 503(b) apply." In addition, they claimed that "[b]esides her statutory privileges, [the complainant] also enjoys a fundamental right to privacy under the recent Right to Privacy Amendment to the New Hampshire Constitution." See N.H. CONST. pt. I, art. 2-b. The intervenors requested that the trial court suspend its orders for production and its review of the records already produced pending notice and a

3

hearing on the complainant's constitutional right to privacy and statutory privileges.

[¶6] The Superior Court (Ignatius, J.) granted the motion to intervene but, following a hearing, denied the motion to quash production of the complainant's counseling and mental health records for in camera review. The trial court determined that "Article 2-b applies to a court's in camera review of counseling records," and, therefore, the question is "how much protection Article 2-b provides and, specifically, [whether] Article 2-b alter[s] the Gagne framework." See Gagne, 136 N.H. at 104-06 (establishing standard for obtaining in camera review and disclosure of confidential or privileged records). Although the trial court "acknowledge[d] that Article 2-b requires a reassessment of the procedures for review and disclosure of an alleged victim's counseling records," it declined to "dispense wholesale the historic precedent to accommodate Article 2-b protections." Accordingly, the trial court determined that "the Gagne standard remains the appropriate standard of review" and explained that "if the Court finds disclosure of records necessary, it will take into account [the complainant's] rights under Article 2-b."

[¶7] Applying Gagne, the trial court concluded that the defendant had satisfied the standard to obtain in camera review because his "theory that [the complainant] may have made additional exculpatory statements in counseling is 'based on more than bare conjecture' and [the defendant] has presented a 'plausible theory of relevance and materiality.'" The trial court reasoned that the governmental intrusion of an in camera review would be minimal and the defendant had sufficiently alleged that the complainant made inconsistent statements regarding her allegations.

[¶8] The complainant thereafter moved for interlocutory appeal of the order denying her motion to quash. Over the defendant's objection, the trial court granted the motion for interlocutory appeal and transferred two questions to this court.

## II.    Analysis

## A.  Question 1

[¶9] The first question presented in this appeal asks whether the adoption of Part I, Article 2-b of the State Constitution alters the showing a defendant must make to obtain in camera review and disclosure of confidential or privileged records. Because the counseling and medical records sought in this case are not in the State's possession, the parties' arguments focus on the standard for obtaining in camera review and disclosure of records held by private organizations.

4

[¶10] We begin with a brief discussion of <u>Gagne</u> and its progeny, which establish the standard a defendant must meet to obtain <u>in camera</u> review and disclosure of confidential or privileged records. In <u>Gagne</u>, the defendant argued that the trial court's refusal to conduct an <u>in camera</u> review of confidential records in the possession of DCYF violated his due process rights under Part I, Article 15 of the State Constitution and the Fourteenth Amendment to the Federal Constitution. <u>Gagne</u>, 136 N.H. at 102. We addressed two distinct but related issues. <u>Id</u>. at 104. "The first issue is what showing must the defendant make to the trial court in order <u>to obtain a review</u> of the privileged information." <u>Id</u>. "The second issue is what showing must the defendant make in order <u>to use</u> the privileged information in the actual trial of his case, assuming the review of the privileged information has revealed evidence that could be potentially useful." <u>Id</u>.

[¶11] As to the first issue, we followed the United States Supreme Court's analysis in <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987), and concluded that due process considerations require trial courts to balance the State's interest in protecting the confidentiality of child abuse records against the defendant's right to obtain evidence helpful to his defense. <u>Gagne</u>, 136 N.H. at 105. We recognized that trial courts, when determining whether an <u>in camera</u> review is warranted, cannot realistically expect defendants to articulate the precise nature of confidential records without having prior access to them. <u>Id</u>. Therefore, we held that "in order to trigger an <u>in camera</u> review of confidential or privileged records, the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense." <u>Id</u>.

[¶12] We have since explained that the "threshold showing necessary to trigger an <u>in camera</u> review is not unduly high," but a defendant "must meaningfully articulate how the information sought is relevant and material to his defense." <u>State v. Graham</u>, 142 N.H. 357, 363 (1997). "To do so, he must present a plausible theory of relevance and materiality sufficient to justify review of the protected documents, <u>cf</u>. <u>Ritchie</u>, 480 U.S. at 58 n.15, but he is not required to prove that his theory is true." <u>Id</u>. "At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by the information sought." <u>Id</u>. (quotation omitted); <u>see also</u> <u>State v. Hoag</u>, 145 N.H. 47, 50 (2000) ("In order to trigger <u>in camera</u> review, the defendant must assert some factual basis beyond the mere existence of counseling records.").

[¶13] Regarding the second issue, the standard a defendant must meet to use privileged information at trial, <u>Gagne</u> reaffirmed our holding in <u>State v. Farrow</u>, 116 N.H. 731, 733 (1976). <u>See</u> <u>Gagne</u>, 136 N.H. at 104-05. In <u>Farrow</u>, we held that under the Sixth Amendment to the Federal Constitution, trial courts must permit defendants to use privileged material if such material is "essential and reasonably necessary to permit counsel to adequately cross-

5

examine for the purpose of showing unreliability and bias." Farrow, 116 N.H. at 732-33. Since deciding Gagne, we have clarified that "in reviewing the records, the trial court must determine if material and relevant evidence is in fact contained in the records." State v. Girard, 173 N.H. 619, 628 (2020) (quotation omitted).

[¶14] Here, the parties' arguments concern our decision in Cressey. There, we addressed the issue of in camera review of privileged records only after finding reversible error on separate grounds, and solely "in the interest of judicial economy to the extent [the issue is] likely to arise again in a second trial." Cressey, 137 N.H. at 412-13. We concluded that, "in the event of a retrial, the trial court must conduct an in camera review" of notes made during counseling sessions by a privately employed psychologist "should the defendant establish a reasonable probability that the [notes] contain information relevant and material to his defense." Id. at 413. We reasoned that the standard established in Gagne applies equally to cases where a defendant seeks in camera review of privileged records held by private third parties as it does to cases where the records are in the government's possession. Id. As we explained:

> Gagne did not distinguish between the privileged records of a State agency and the privileged records of a private organization. The rationale in Gagne, balancing the rights of a criminal defendant against the interests and benefits of confidentiality, applies equally in both cases. A record is no less privileged simply because it belongs to a State agency. Likewise, a defendant's rights are no less worthy of protection simply because he seeks information maintained by a non-public entity.

Id.

[¶15] The complainant and the State argue that, in light of the adoption of Part I, Article 2-b of the State Constitution, we should overrule this part of Cressey, limit the application of Gagne to records in the State's possession, and adopt a heightened standard for obtaining in camera review and, ultimately, disclosure of confidential or privileged records held by private organizations. The defendant contends that Part I, Article 2-b does not alter the standard for obtaining in camera review and disclosure and that the trial court correctly concluded that Gagne, as clarified by Girard, remains the applicable standard.

[¶16] Enacted in 2018, Part I, Article 2-b provides: "An individual's right to live free from governmental intrusion in private or personal information is natural, essential, and inherent." N.H. CONST. pt. I, art. 2-b. Article 2-b creates a constitutional right to privacy. See id. This right is among the "natural, essential, and inherent rights" enumerated in Part I, Article 2 of the State Constitution. See N.H. CONST. pt. I, art. 2. Among those Article 2 rights

6

are "the enjoying and defending life and liberty; acquiring, possessing, and protecting, property; and . . . seeking and obtaining happiness." Id. As we have previously recognized, the rights identified in Part I, Article 2 of the New Hampshire Constitution "are not bestowed by that constitutional provision but rather are recognized to be among the natural and inherent rights of all humankind." Burrows v. City of Keene, 121 N.H. 590, 596 (1981).

[¶17] This appeal presents the first occasion for this court to address the issue of Part I, Article 2-b's application to in camera review of privileged or confidential records in criminal proceedings. We have previously instructed that trial courts, when considering whether to disclose privileged or confidential records following an in camera review, should account for, among other things, an individual's rights under Part I, Article 2-b, if any. See State v. Chandler, 176 N.H. 216, 233 (2023). However, we have not yet considered whether, as the complainant and the State argue, Article 2-b mandates a rebalancing of the rights that factored into our decision in Cressey.

[¶18] The parties do not challenge the trial court's determination that the complainant's counseling and mental health records "are indisputably 'private or personal information.'" Nor do they take issue with its statement that "a court's in camera review of those records to determine whether to disseminate them to the prosecutor and defendant is 'governmental intrusion' because otherwise a defendant would have no means to access those records." (Quoting N.H. CONST. pt. I, art. 2-b.) Accordingly, because the records sought here are in the possession of private organizations, the question is whether Part I, Article 2-b abrogates our holding in Cressey.

[¶19] The complainant asserts that Cressey represents "a fundamental misunderstanding of the state action doctrine" because it erroneously extended Gagne's holding to include records possessed by private — rather than public — entities. The State agrees and argues that Cressey is either incorrect as a matter of federal constitutional law or "disconcerting" as a matter of state constitutional law. In the State's view, "Cressey's expansion of Gagne incorrectly concluded that Ritchie and Gagne apply to records in the hands of private actors, thereby undermining the counselor-patient relationship."[1]

[¶20] Both Gagne and Ritchie involved records in the government's possession. See Gagne, 136 N.H. at 102, 105; Ritchie, 480 U.S. at 43, 59-60; see also State v. Pinder, 678 So. 2d 410, 414 (Fla. Dist. Ct. App. 1996) ("The Ritchie due process analysis necessarily assumed that the Pennsylvania CYS

---

[1] The defendant asserts that the complainant failed to sufficiently argue in the trial court that our holding in State v. Cressey, 137 N.H. 402, 413 (1993), should be overruled and that the issue is therefore not preserved for our review. However, based upon our review of the record, we conclude that the complainant presented this issue to the trial court and that it therefore is preserved for review.

was a governmental agency subject to the obligation to disclose Brady material."). As a result, both cases implicated the prosecution's "obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Ritchie, 480 U.S. at 57 (emphasis added); see also State v. Laurie, 139 N.H. 325, 330 (1995) ("Upon a showing by the defendant that favorable, exculpatory evidence has been knowingly withheld by the prosecution, the burden shifts to the State to prove beyond a reasonable doubt that the undisclosed evidence would not have affected the verdict." (emphasis added)). Gagne, following the United States Supreme Court's analysis under the Fourteenth Amendment to the Federal Constitution in Ritchie, balanced "the State's interest in protecting the confidentiality of child abuse records against the defendant's right to obtain evidence helpful to his defense." Gagne, 136 N.H. at 105-06. The due process considerations in Gagne, like Ritchie, were premised upon the government possessing the records sought. See id.

[¶21] The question in Cressey, however, was the standard a defendant must meet to access privileged records held by a private organization. See Cressey, 137 N.H. at 413. Consequently, Cressey did not implicate the prosecution's constitutional obligation to disclose evidence in its possession that is favorable to the defense. See id. "[W]hile the government has an obligation to tender to the defense all exculpatory records in its possession, it has no obligation to seek out such information from third parties." United States v. Hach, 162 F.3d 937, 947 (7th Cir. 1998); see also State v. Johnson, 990 N.W.2d 174, 183 (Wis. 2023) ("Ritchie simply does not apply to privately held records."). "[I]f the documents are not in the government's possession, there can be no 'state action' and consequently, no violation of [the] Fourteenth Amendment." Hach, 162 F.3d at 947. Accordingly, our conclusion in Cressey was incorrectly premised upon the defendant's right to due process.

[¶22] Here, in a case factually analogous to Cressey, the defendant seeks in camera review and disclosure of privileged or confidential records held by private organizations. See Cressey, 137 N.H. at 413. However, our reexamination of Cressey's reasoning and consideration of the constitutional right to privacy in Part I, Article 2-b compel a different analysis.

[¶23] As we have explained, the defendant's constitutional due process right to disclosure of exculpatory evidence extends only to records in the government's possession. See Ritchie, 480 U.S. at 57. Therefore, the defendant has no constitutional due process right to records in the possession of private organizations. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and Brady did not create one; as the Court wrote recently, the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." (quotation omitted)). "[T]he Supreme Court has construed due process to demand only that when compulsory discovery is made available in a

8

criminal case, it must be provided to the defense on the same terms as it is to the government." State v. Heath, 129 N.H. 102, 109 (1986).

[¶24] Further, after we decided Cressey, New Hampshire voters approved Article 2-b, which recognizes the natural and inherent right to privacy "in private or personal information." N.H. CONST. pt. I, art. 2-b. There is no dispute in the instant case that the complainant's records are "private or personal information" within the scope of Article 2-b's right to privacy.

[¶25] On balance, these considerations — the complainant's fundamental right to privacy, together with the absence of a due process right entitling the defendant to the complainant's privately held records — favor nonproduction and nondisclosure. Accordingly, we conclude that Part I, Article 2-b abrogates Cressey's application of Gagne to cases in which the defendant seeks records held by private organizations.

B. Question 2

[¶26] In light of the foregoing, we must next determine the appropriate standard for obtaining in camera review of confidential or privileged records in the possession of private organizations. We note that neither the complainant nor the State urge that this court adopt an absolute bar to obtaining privileged records. The complainant argues that we should replace Cressey's "two-step balancing test with standards and processes respecting a private third party's fundamental privacy rights" and that "Article 2-b frees this Court to implement existing statutory processes to resolve disputes concerning record disclosure." Both the complainant and the State assert that we should apply two standards for obtaining in camera review depending upon the nature of the records sought: the "substantial likelihood" standard for records privileged under RSA chapter 173-C, and either an "essential need" standard or "the same standards as are available for the attorney-client privilege" for mental health records privileged under RSA 329-B:26 and RSA 330-A:32.

[¶27] RSA 173-C:2 creates a privilege for "confidential communications made by the victim to a sexual assault counselor or a domestic violence counselor" and provides that such communications or records thereof "may be disclosed only with the prior written consent of the victim." RSA 173-C:2 (2022). RSA chapter 173-C defines "confidential communication" as "information transmitted" between a victim of "an alleged sexual assault . . . and a sexual assault or domestic violence counselor in the course of that relationship and in confidence by means which, so far as the victim is aware, does not disclose the information to a third person." RSA 173-C:1, I (2022). "Sexual assault counselor" is defined as "any person who is employed or appointed or who volunteers in a rape crisis center" who renders certain services and has completed the requisite training. RSA 173-C:1, V (2022); see also RSA 173-C:1, IV (2022) (defining rape crisis center).

9

[¶28] The complainant and the State argue that the standard set forth in RSA 173-C:5 for obtaining and disclosing records should apply to those records privileged under RSA chapter 173-C. We agree. Pursuant to RSA 173-C:5 (2022), "a defendant [who] seeks information privileged under this chapter in discovery or at trial" must file a written motion and affidavit "setting forth specific grounds as to why discovery is requested and showing that there is a substantial likelihood that favorable and admissible information would be obtained through discovery or testimony." RSA 173-C:5, I. "The only information subject to discovery . . . are those statements of the victim which relate to the alleged crime being prosecuted." RSA 173-C:5, II.

[¶29] As to the standard for using privileged records at trial, a defendant seeking records privileged under RSA chapter 173-C must prove by a preponderance of the evidence that: (1) the probative value of the information sought "outweighs its prejudicial effect on the victim's emotional or physical recovery, privacy, or relationship with the counselor or the rape crisis or domestic violence center"; (2) the information is "unavailable from any other source"; and (3) "there is a substantial probability that the failure to disclose that information will interfere with the defendant's right to confront the witnesses against him and his right to a fair trial." RSA 173-C:5, III.

[¶30] In addition to RSA chapter 173-C, the legislature has placed certain "confidential relations and communications . . . on the same basis as those provided by law between attorney and client."[2] RSA 329:26 (2017) (physician-patient privilege); RSA 329-B:26 (2017) (psychologist-patient privilege); RSA 330-A:32 (Supp. 2024) (psychotherapist-patient privilege); see also N.H. R. Ev. 503. These privileges reflect the fact that much of what a physician, psychologist, or psychotherapist learns from his or her patient may be both embarrassing and of little real consequence to society. Cf. Petition of State of N.H. (State v. MacDonald), 162 N.H. 64, 67 (2011).

[¶31] However, we have recognized that confidential information pertinent to criminal investigation and prosecution may be of significant consequence to society in some circumstances. In re Grand Jury Subpoena (Medical Records of Payne), 150 N.H. 436, 440 (2004). The proper administration of justice requires that every reasonable effort be made to search for the truth. Id. When construing the physician-patient privilege, for example, we do so strictly and in recognition that the legislature did not intend for the privilege to compromise the judicial function of ensuring the just

---

[2] In the context of the attorney-client privilege, a communication is confidential if it is "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Prof. Fire Fighters of N.H. v. N.H. Local Gov't Ctr., 163 N.H. 613, 615 (2012) (quotation omitted). If the communicating person reasonably believes that no one will learn the contents of the communication except a privileged person, then the communication will be protected from disclosure. Id.

resolution of claims by giving one party the right to deprive another of relevant information.  Id.  We are cognizant that the legislature designed the privilege not to exclude relevant evidence, but simply to facilitate activities which require confidence.  Id.  These privileges are not absolute, and there are generally two means by which disclosure of privileged information may occur: (1) the court finds a waiver of the privilege; or (2) the court orders a piercing of the privilege.  Petition of State of N.H. (State v. MacDonald), 162 N.H. at 69; see also RSA 329-B:26; RSA 330-A:32.

[¶32] For records privileged under RSA 329-B:26 and RSA 330-A:32, the complainant argues that "the same standards as are available for the attorney-client privilege" should apply, whereas the State, citing the trial court's analysis in State v. Brown, counters that the "essential need" test should apply.  See State v. Javon Brown, No. 2020-CR-00483, at 15-17 (N.H. Super. Ct., Hills Cnty.-N. Dist. Aug. 22, 2022).  We agree with the State.

[¶33] In Brown, the trial court, after considering the standards applicable to piercing the privilege against self-incrimination, see State v. Winn, 141 N.H. 812, 814-15 (1997), the physician-patient privilege, see In re Search Warrant (Med. Records of C.T.), 160 N.H. 214, 225 (2010), and the attorney-client privilege, see McGranahan v. Dahar, 119 N.H. 758, 764 (1979), adopted an "essential need" standard.  Brown, No. 2020-CR-00483, at 16-17.  To establish an "essential need" for an individual's privileged records, the defendant must establish that the targeted information is unavailable from another source and that there is a compelling justification for its disclosure.  Brown, No. 2020-CR-00483, at 16; see McGranahan, 119 N.H. at 764 ("The attorney-client privilege may not be absolute when there is a compelling need for the information and no alternative source is available.").

[¶34] The search for relevant evidence may constitute a compelling justification.  See In re Search Warrant (Med. Records of C.T.), 160 N.H. at 222.  However, the defendant must show that there is no reasonably available alternative source for the information sought.  Id.  In determining whether a reasonable alternative source is available such that the defendant can prepare a defense without access to the individual's privileged records, the court must consider: (1) whether the alternative evidence is admissible at trial; (2) whether the alternative evidence is sufficient to overcome a motion for directed verdict; and (3) whether the defense has made adequate efforts to investigate alternative sources.  Brown, No. 2020-CR-00483, at 17; see In re Search Warrant (Med. Records of C.T.), 160 N.H. at 222.

[¶35] The defendant maintains that the trial court in the present case correctly rejected the "essential need" standard.  He reasons that because the "essential need" test was derived from cases involving governmental intrusion into private information "in a non-adversarial preindictment setting to pierce a confidential privilege and gain unfettered access to an uncharged person's

11

confidential information," see, e.g., In re Search Warrant (Med. Records of C.T.), 160 N.H. at 222, the test is inapposite here, where a criminal defendant seeks review of confidential or privileged records during the pendency of his case. We disagree. Our reasoning in cases that have applied an "essential need" standard did not depend upon the context in which the assertion of the privilege arose. See id. at 226 ("[O]ur established law governing piercing the [physician-patient] privilege, concededly outside the warrant context, has ultimately focused on 'essential need.'").

[¶36] We therefore hold that, for records privileged under RSA 329-B:26 and RSA 330-A:32, a defendant must establish an essential need for the records sought. To do so, a defendant must prove both that there is a compelling justification for the disclosure of the records, and that the targeted information is unavailable from another source. Brown, No. 2020-CR-00483, at 16. To determine whether there is a reasonably available alternative source, courts must consider: (1) whether the alternative evidence is admissible at trial; (2) whether the alternative evidence is sufficient to overcome a motion for directed verdict; and (3) whether there has been an adequate effort to investigate alternative sources. Id. at 17; see In re Search Warrant (Med. Records of C.T.), 160 N.H. at 222. Of course, if the legislature disagrees with our analytical standards for piercing the privileges codified in RSA 329-B:26 and RSA 330-A:32, it is free, within constitutional limits, to amend those statutes as it deems fit. See State v. Van Uden, 176 N.H. 772, 780 (2024), 2024 N.H. 47, ¶21.

[¶37] Finally, the State argues that courts must provide notice to individuals whose confidential or privileged records are sought by defendants in criminal proceedings. Such notice is necessary, the State contends, to afford victims and other witnesses the opportunity to protect their constitutional right to privacy under Article 2-b and assert statutory privileges. We agree. This notice requirement is consistent with the legislature's pronouncement of the rights of crime victims. See RSA 21-M:8-k, II (Supp. 2024) (rights of crime victims include, inter alia, "[t]he right to be informed about the criminal justice process and how it progresses" and "[t]he right to reasonable and timely notice of all court proceedings"). Accordingly, we exercise our supervisory power to provide guidance to trial courts and parties as to a uniform and fair process to be applied in future cases. See In re Search Warrant (Med. Records of C.T.), 160 N.H. at 226; see also State v. Barnett, 147 N.H. 334, 337 (2001) (electing "to exercise supervisory jurisdiction over our trial courts to ensure the fair administration of justice"); Boody v. Watson, 64 N.H. 162, 169-70 (1886) (noting that Supreme Court has broad and comprehensive supervisory powers). Henceforth, when a defendant seeks a court order requiring production and disclosure of an individual's confidential or privileged records, notice and an opportunity to object must be provided to the individual whose records are sought. Once the trial court has considered

the parties' arguments and any objection made by the individual whose records are sought, the trial court may then rule on the defendant's motion.

## III.    Conclusion

[¶38] In sum, we conclude that Part I, Article 2-b abrogates our holding in Cressey, and the Gagne standard does not apply to confidential or privileged records held by private organizations.  We further conclude that the procedure outlined in RSA 173-C:5 applies when a defendant seeks records privileged under RSA chapter 173-C, and the essential need standard applies when a defendant seeks records privileged pursuant to RSA 329-B:26 and RSA 330-A:32.  We also conclude that notice and an opportunity to object must be provided to the individual whose records are the subject of a defendant's motion.  Accordingly, we vacate the order denying the complainant's motion to quash and remand for further proceedings consistent with this opinion.

Vacated and remanded.

MACDONALD, C.J., and BASSETT and COUNTWAY, JJ., concurred.