Merrimack County Probate Court
No. 84-006
No. 84-007
No. 84-122

*In re* KATHLEEN M.

*In re* KATHLEEN D.

*In re* CHARLES W.

April 18, 1985

*Gregory H. Smith*, attorney general (*Peter J. Minkow*, attorney, on the brief and orally), for the State in the cases of Kathleen M. and Charles W.

*Gregory H. Smith*, attorney general (*Douglas L. Patch*, assistant attorney general, on the brief), by brief for the State in the case of Kathleen D.

*Steven H. Slovenski*, of Concord, by brief and orally, for Kathleen M.

*Geiger and Heiser*, of Penacook (*Richard W. Heiser* on the brief), by brief for Kathleen D.

*Bamberger, Shaw & Pfundstein*, of Concord (*Donald J. Pfundstein* on the brief and orally), for Charles W.

DOUGLAS, J. These three cases are on appeal from the Merrimack County Probate Court (*Cushing*, J.) pursuant to Supreme Court Rule 7. They present the common issue whether the physician-patient privilege set forth in RSA 329:26 is applicable to involuntary commitment hearings pursuant to RSA chapter 135-B. We hold

that no *per se* exception exists for such hearings, but that the physician-patient privilege is qualified and may be overcome by sufficiently compelling countervailing interests.

All three respondents timely excepted to the admission of testimony during their involuntary commitment hearings which involved confidential communications between them and either their present or their prior treating psychiatrists. Although at least one of the respondents is no longer committed to the New Hampshire Hospital, we will decide the appropriateness of admitting the challenged evidence in all three cases, since involuntary commitments are often for durations shorter than the time required to complete an appeal. Thus, the alleged errors in these cases may be "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). Further, because of the stigma attached to being involuntarily committed, a person wrongfully subject to such confinement should at least have his or her records appropriately revised to reflect such a finding by this court. *Proctor v. Butler*, 117 N.H. 927, 930–31, 380 A.2d 673, 674–75 (1977).

Kathleen M.'s hearing was for recommitment after a three-month term of involuntary confinement. She challenges the admission of testimony by Dr. Peter Delfausse, the psychiatrist on her ward at the New Hampshire Hospital. He testified as to communications between him and Kathleen M. in which she stated that she was a danger to herself.

Kathleen D. challenges admission of testimony by Rena Ware, a mental health worker at the New Hampshire Hospital, only to the extent that it included statements made in Ms. Ware's presence by Kathleen D. to her treating psychiatrist, Dr. Luigi N. Dolcino.

Charles W. argues on appeal that it was error to allow testimony relating to the contents of a current mental status exam which included communications between him and Dr. Neal Remington, his prior treating psychiatrist.

At the outset, we note that the communications in all three cases here are privileged under RSA 329:26, the physician-patient privilege. All involved confidential communications between treating psychiatrists, who are physicians, and their patients. None of the patients waived the privilege. RSA 329:26 provides in part:

> "The confidential relations and communications between a physician . . . and his patient are placed on' the same basis as those provided by law between attorney and client, and, except as otherwise provided by law, no such physician . . . shall be required to disclose such privileged communications. Confidential relations and communica-

tions between a patient and any person working under the supervision of a physician . . . that are customary and necessary for diagnosis and treatment are privileged to the same extent as though those relations or communications were with such supervising physician . . . ."

We have held in the past that the physician-patient privilege is a qualified one which will yield when there are sufficiently compelling countervailing considerations. *State v. Kupchun*, 117 N.H. 412, 415, 373 A.2d 1325, 1327 (1977); *State v. Farrow*, 116 N.H. 731, 733, 366 A.2d 1177, 1179 (1976). The State argues that the very nature of involuntary commitment proceedings under RSA chapter 135-B provides sufficiently compelling grounds to warrant exempting them from the physician-patient privilege. As the basis for this, the State asserts that in involuntary commitment proceedings, it must prove beyond a reasonable doubt that a person is mentally ill and that as a result of this mental condition, there is a serious likelihood of danger to himself or others. *Proctor v. Butler*, 117 N.H. 927, 935, 380 A.2d 673, 677–78 (1977); RSA 135-B:26. It further contends that because the statute is concerned with the protection of mentally ill persons and other members of society, and because the testimony of the treating psychiatrist is the best evidence with which to demonstrate mental illness and potential dangerousness, the physician-patient privilege should not apply to RSA chapter 135-B hearings. We disagree.

As we have recognized, "[t]he real purpose of any privilege is not to exclude relevant evidence, but simply to facilitate activities which require confidence." *In re Brenda H.*, 119 N.H. 382, 387, 402 A.2d 169, 173 (1979) (quoting McNamara, *The Hierarchy of Evidentiary Privilege in New Hampshire*, 20 N.H.B.J. 1, 27 (1978)). Confidentiality of psychiatrist-patient communications fosters the patient's interest in privacy and the public's interest in effective treatment, as well as the public's interest in encouraging disturbed persons to seek therapy without fear of publicity. Poltz, *Psychiatrists' Duty to the Public: Protection from Dangerous Patients*, UNIV. OF ILL. LAW FORUM 1103, 1111 (1976).

Given the intimate nature of the psychiatrist-patient relationship, "[t]he preservation of confidentiality of communications between therapist and patient may be a crucial factor in the successful treatment of psychiatric problems." *Brenda H.*, *supra* at 386, 402 A.2d at 172.

"The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his

entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition . . . . It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from what they say—may be revealed to the whole world from a witness stand."

*Taylor v. United States*, 222 F.2d 398, 401 (D.C. Cir. 1955) (quoting M. GUTTMACHER & H. WEIHOFEN, PSYCHIATRY AND THE LAW 272 (1952)).

█ We can find no reason to justify negating the legislative purposes and policies which the psychiatrist-patient privilege is designed to foster by making a *per se* exception to this privilege for RSA chapter 135-B hearings. Indeed, because patients subject to those hearings may be quite disturbed, it is perhaps even more important in those cases to facilitate treatment by keeping the privilege intact wherever possible.

We note first that the physician-patient privilege is a statutory one and that there is no indication that the legislature intended to except RSA chapter 135-B hearings. RSA 329:26 specifically provides that the privilege is not applicable to certain proceedings. Involuntary commitment hearings are not among those enumerated exceptions. Nor does RSA chapter 135-B itself contain an exemption from the physician-patient privilege, even though the legislature has included such an exemption within statutes providing for other types of hearings. *See* RSA 169-C:32 (abused and neglected child hearings).

The State argues, however, that even if the legislature did not specifically exempt RSA chapter 135-B hearings, they fall within our holding in *State v. Kupchun*, 117 N.H. 412, 373 A.2d 1325 (1977), and should be exempted on that basis. In that case, a criminal defendant pleaded not guilty by reason of insanity to arson and attempted arson and was committed to the New Hampshire Hospital pursuant to RSA 607:4 (currently RSA 651:9 (Supp. 1983)). Such a commitment must be periodically reviewed, at which time the burden is on the State to establish that the commitment should be continued. RSA 651:11-a (Supp. 1983). For this purpose, the State sought access to the defendant's medical records. We held that for hearings for the recommitment of the criminally insane, the physician-patient and the psychologist-patient (RSA 330-A:19) privileges bar neither the admission of these records nor the testimony of treating physicians and psychologists.

In allowing these disclosures, we reasoned that because the superior court was charged by the legislature with the duty of reviewing the commitment of criminally insane persons, it needed the "best information available which has a bearing on the defendant's dangerousness or mental condition." *Kupchun, supra* at 415, 373 A.2d at 1327. We found that the otherwise applicable privilege was outweighed by the essentiality of the information to a determination of future dangerousness:

> "Without access to the evidence ordered by the trial court in this case, the state would be virtually deprived of the opportunity to present to the superior court the evidence it must have to properly decide whether the defendant's stay in the hospital should be continued."

*Kupchun, supra* at 415–16, 373 A.2d at 1327. This court further expressed concern that if the therapist-patient privileges were interpreted to prevent the ordered disclosures, the practical result would be that the criminally insane would be committed for a duration of only two years, the review period mandated at that time. *Kupchun, supra* at 416, 373 A.2d at 1327.

The circumstances in *Kupchun* are different from those in the present cases. *Kupchun* involved a criminal defendant who entered an insanity plea and was committed to the New Hampshire Hospital pursuant to the provisions of RSA chapter 651, the sentences chapter of the Criminal Code. The defendant's mental illness, by his own admission, had already resulted in criminal activity dangerous to others. In contrast, the respondents in these cases committed no crimes and were involuntarily admitted to New Hampshire Hospital in civil proceedings for their treatment, RSA 135-B:1. As already discussed, the facilitation of treatment is the goal fostered by the physician-patient privilege. Unlike the defendant in *Kupchun,* the respondents here were all determined to be dangerous to themselves rather than to others.

Further, the length of confinements in recommitment hearings for the criminally insane makes it likely that privileged information will be the only evidence available. At the time of *Kupchun,* confinements of the criminally insane were subject to review every two years. RSA 651:11-a (Supp. 1975). Presently the review period is five years. RSA 651:11-a, I (Supp. 1983). Confinements of such lengths might weaken the significance of the acts which precipitated the initial confinements as evidence to prove future dangerousness.

In contrast, there are more sources of evidence available of "specific acts or actions" indicating potential dangerousness (RSA 135-B :28) in RSA chapter 135-B hearings. Indeed, as counsel for both the

State and the respondents stated at oral argument, there have been very few occasions where the testimony of treating psychiatrists has been involved during RSA chapter 135-B proceedings. Although Kathleen M.'s hearing was for recommitment, her initial confinement was for only three months, not a long enough period of time to warrant a finding, without more, that Dr. Delfausse's testimony was essential.

 Although the nature of involuntary commitment proceedings does not warrant a *per se* exemption from the physician-patient privilege, the circumstances in individual cases may compel such an exemption. In RSA chapter 135-B hearings, the testimony of a psychiatrist relating to his or her confidential relationship or communications with a patient may be "essential" where the psychiatrist feels that the patient is mentally ill and that this condition creates a potentially serious likelihood of danger to himself or others, and where the psychiatrist's testimony is the only available source by which to prove these elements. *See* RSA 135-B:26; *Tarasoff v. Regents of University of California*, 131 Cal. Rptr. 14, 27, 551 P.2d 334, 347 (1976); *McGranahan v. Dahar*, 119 N.H. 758, 764, 408 A.2d 121, 125 (1979) ("The attorney-client privilege may not be absolute when there is a compelling need for the information and no alternative source is available").

Turning to the three cases before us, we find that in none of those cases was the information so essential as to warrant an abrogation of the privilege.

Kathleen M. had been committed to the New Hampshire Hospital under RSA chapter 135-B for three months. Toward the end of that period, a nurse at the hospital petitioned for her recommitment. Dr. Peter Delfausse, the psychiatrist on her ward, was a witness at the second hearing. Although he testified that "it would have to be the assumption of any patient that I see that I am a psychiatrist, and there is a privilege between a psychiatrist and a patient," he went on to relate that Kathleen M. told him that she was a danger to herself. There was no other evidence of specific acts or statements offered to show that Kathleen M. was dangerous to herself or others, and she was recommitted.

Although counsel for the State asserted at the hearing that "[t]here are no other witnesses that have a direct knowledge as Dr. Delfausse has," the record does not demonstrate that the testimony of Dr. Delfausse was essential so as to override the physician-patient privilege. First, the involuntary commitment petition specifically listed another witness, Cheryl Kordas, a mental health worker at the hospital, who would testify to the acts or actions recited in the peti-

tion. The State provided no explanation for not producing Ms. Kordas, even though she apparently was available.

Further, under RSA 329:26 only confidential relations and communications between a patient and a member of his treatment team, including his psychiatrist, which are customary and necessary for diagnosis and treatment, are privileged. Thus, observations by treatment team members of actions by their patients, when not made for the purpose of diagnosis and treatment, are not privileged. Dr. Delfausse testified that his conclusion regarding the necessity of recommitting Kathleen M. was based in part on his direct "observations" of her behavior. As long as the alleged acts constituting this behavior were not performed pursuant to the confidential relationship, Dr. Delfausse, or other members of the treatment team, could have testified to them without violating the privilege. No such testimony was forthcoming.

■ Counsel for the State also offered no explanation as to why other hospital personnel could not testify or why non-hospital personnel, such as friends or relatives who may have visited her, were not available. A mere conclusory statement by the State to the effect that the treating psychiatrist offers the best evidence as to dangerousness, does not amount to a showing of essentiality.

■ Because there was no showing that Dr. Delfausse's testimony was essential, admission of that evidence was error. Since his testimony was the only evidence of "sufficiently recent 'specific acts or actions' showing potential dangerousness," *Proctor v. Butler*, 117 N.H. 927, 935, 380 A.2d 673, 678 (1977), we reverse the finding of the probate court.

Kathleen D.'s hearing was an initial determination under RSA chapter 135-B. On appeal, she objects to the admission of testimony of Rena Ware, a mental health worker at the New Hampshire Hospital, only insofar as it included the contents of statements made by Kathleen D. to her treating psychiatrist, Dr. Dolcino, in the presence of Ms. Ware.

■ We agree with the respondent that the challenged testimony was privileged and that this privilege was not broken even though the statements were made in the presence of a third party. Rena Ware was not an extraneous third person but was a member of Kathleen D.'s treatment team under the direct supervision of Dr. Dolcino. Under these circumstances, the presence of a third party does not break the privilege. *See State v. LaRoche*, 122 N.H. 231, 233, 442 A.2d 602, 603 (1982).

■ Although it was error to admit the testimony of Ms. Ware regarding the conversation between Kathleen D. and Dr. Dolcino, there was sufficient other evidence in this case, including testimony of an emergency services psychiatric social worker and unprivileged observations of Kathleen D. by Ms. Ware, for a rational fact-finder to find beyond a reasonable doubt that Kathleen D. was dangerous to herself. Therefore, we affirm the decision of the probate court as to her involuntary commitment. *Vigitron, Inc. v. Ferguson*, 120 N.H. 626, 630, 419 A.2d 1115, 1118 (1980). Because the statute in issue on Kathleen D.'s appeal is the physician-patient privilege statute, RSA 329:26, we will not reach her arguments regarding the alleged constitutional infirmities of the psychologist-patient privilege statute, RSA 330-A:19.

■ At his hearing, Charles W. challenged the admission of testimony by Dr. Neal Remington, his prior treating psychiatrist, regarding communications made by him to Dr. Remington as part of a mental status exam, after the termination of their psychiatrist-patient relationship. We first note that these communications are privileged, since a patient would reasonably expect such communications to be for diagnosis and treatment and would thus reasonably anticipate continued confidentiality from a former psychiatrist.

On the day of Charles W.'s hearing, the State filed a motion to substitute Dr. Remington for two other witnesses it had scheduled for the purpose of proving Charles W.'s dangerousness to himself. These two witnesses were "unavailable," one because he no longer worked at the New Hampshire Hospital, and the other because he was temporarily out of town.

The State offered to have an aide at the State hospital testify to specific acts showing dangerousness if the court determined that Dr. Remington's testimony was privileged. The court ruled that the testimony of Dr. Remington was "essential" and therefore admitted it. The aide did not testify. We disagree with the finding of the court that Dr. Remington's testimony was essential.

■■ There is not enough evidence in the record to indicate that the scheduled witnesses were not available. The fact that a witness is no longer employed by the New Hampshire Hospital, or is temporarily out of town, does not equal unavailability. Further, the record reveals that at least one other witness was available to attest to specific acts demonstrating the respondent's dangerousness to himself. Therefore, the finding of the court that Dr. Remington's testimony was essential was unwarranted, and it was error to admit the evidence. Because this testimony was necessary to a determina-

388

tion that the respondent was a danger to himself, we reverse the finding of the probate court.

*No. 84-006 reversed and remanded; No. 84-007 affirmed; No. 84-122 reversed and remanded.*

All concurred.