Rockingham County Probate Court
No. 91-563

*In re* RONALD J. PERLEY, JR.

May 14, 1993

*John P. Arnold*, attorney general (*Daniel J. Mullen*, assistant attorney general, on the brief, and *Nancy J. Smith*, assistant attorney general, orally), for the petitioner.

*David H. Bownes*, of Laconia, by brief and orally, for the respondent.

THAYER, J.   The respondent, Ronald J. Perley, Jr., was the subject of involuntary commitment proceedings in the Rockingham County Probate Court (*Cassavechia*, J.) pursuant to RSA 135-C:34-54 (1990 & Supp. 1992). The court ordered Perley committed to the secure psychiatric unit (SPU) of the New Hampshire State Prison for a period not to exceed five years. Perley appealed pursuant to RSA 135-C:25 (1990). Finding no error, we affirm.

On June 6, 1991, Perley was voluntarily admitted to the New Hampshire Hospital after his legal guardian was unable to place him in a drug and alcohol rehabilitation program. On June 19, 1991, Perley lost his independent privileges and was placed in a seclusion room after a drug screen test indicated the presence of alcohol in his system. A nurse, Mark Henderson, entered the seclusion room to administer medication and make an assessment of Perley's condition.

As Henderson was leaving the seclusion room, he asked Perley for his sneakers. In one motion, Perley threw his sneakers at the door and swung at a mental health worker who was also in the room. A second mental health worker came into the room and tried to restrain Perley but was unsuccessful; Perley punched him four to five times before being pulled away by Henderson and the first health worker. Perley also tried to hit Henderson, but the blow was deflected.

On July 24, 1991, a petition for Perley's involuntary admission to the SPU was filed. Under RSA 135-C:36, I(b), a petition for admission due to mental illness must include information on "specific acts or actions that the petitioner alleges satisfy RSA 135-C:34." Under section 34,

"[t]he standard to be used by a court, physician, or psychiatrist in determining whether a person should be admitted to a receiving facility for treatment on an involuntary basis shall be whether the person is in such mental condition as a result of mental illness as to create a potentially serious likelihood of danger to himself or to others."

RSA 135-C:34 (1990). The specific act alleged by the petitioner was the June 19 assault.

Perley was examined by a psychiatrist pursuant to RSA 135-C:40 and the psychiatrist, Dr. Edward Drummond, submitted a report on his impression of Perley's condition. Based on a patient evaluation and a review of Perley's medical records, Dr. Drummond determined that Perley warranted a diagnosis of chronic paranoid schizophrenia, antisocial personality disorder and polysubstance abuse and dependence. In his report, Dr. Drummond noted:

"[O]n many occasions [Perley] has been assaultive towards others and towards property as a result of delusional and psychotic thinking that is due to his mental illness. This would certainly include the episode of February 1991 when he assaulted his father and was concerned that the Ku Klux Klan was going to burn down his house. However, the episode in June when he assaulted the staff member appears to have been a planned episode that was not related to any psychotic or delusional thinking."

Dr. Drummond concluded that Perley's mental condition met the RSA 135-C:34 standard for involuntary admission, but noted that "this belief is based on his long term history and not on the event of June 19th, 1991."

The court issued an order admitting Perley to the SPU for a period not to exceed five years based on its interpretation of the standard contained in RSA 135-C:34, ruling:

"The act of June 19, 1991 alleged in the petition, and upon which testimony was presented, clearly presented and demonstrates dangerousness to self and others. The evidence also clearly documents that the ward suffers from mental illness as it is defined in RSA 135-C:2, X. Nothing in the statutory framework of RSA 135-C:34–:54 requires that a specific, medically diagnosed mental illness directly cause the specific act of dangerousness."

■ ■ The involuntary admission provisions of RSA chapter 135-C (1990 & Supp. 1992) require the petitioner to prove, by clear and convincing evidence, that the respondent's present mental condition as a result of mental illness presents a potentially serious likelihood of danger to the respondent or others. *In re Sanborn*, 130 N.H. 430, 441, 545 A.2d 726, 733 (1988). We will uphold a probate court's ruling unless no rational fact-finder could make the findings by clear and convincing evidence. *In re Fasi, a/k/a Cass*, 132 N.H. 478, 486, 567 A.2d 178, 183 (1989).

■ The petitioner alleged below, and the probate court agreed, that the standard contained in RSA 135-C:34 does not require a nexus between the act alleged in the petition and the mental condition that results from mental illness. Perley argues that the statutory scheme must be interpreted to require proof that the dangerous act alleged in the petition is caused by a mental illness. We note that RSA 135-C:36, I(b) requires the petitioner to allege specific acts or actions that satisfy the involuntary admission standard contained in section 34. This allegation is a prerequisite to a hearing to determine whether the petitioner can meet the section 34 standard. RSA 135-C:37.

■ ■ While evidence of the specific act is a central component of the hearing held under RSA 135-C:43, civil commitment is not founded solely on the act alleged in the petition. *In re Fasi, a/k/a Cass*, 132 N.H. at 485, 567 A.2d at 181. The probate court, in making the legal determination of whether a respondent is in a dangerous mental condition, is free to decide what weight to give to past acts manifesting dangerousness and to psychiatric evaluations. *Id.* at 484, 471 A.2d at 181; *see also In re Brown*, 126 N.H. 309, 313, 493 A.2d 447, 450 (1985); *In re Scott L.*, 124 N.H. 327, 332, 469 A.2d 1336, 1338 (1983).

■ While the involuntary admission is initiated by alleging a specific act in the petition, that act is not the focus of the proceeding. The hearing is held to evaluate the present mental condition of the respondent, and commitment will be ordered only when it is "shown to be necessary to protect the person or public from dangerousness caused by mental illness." *In re Fasi, a/k/a Cass*, 132 N.H. at 483, 567 A.2d at 181 (quotation omitted). We find Perley's argument that mental illness must cause the dangerous act alleged in the petition to be untenable.

■ Under Perley's proposed interpretation, the probate court would not have the authority to commit individuals who clearly present a danger to themselves or to society at large if the dangerous act in the petition could not be proven to have been caused by mental illness. Recognizing that psychiatry is an inexact science, and that the purpose of the statute is to "[p]revent mentally ill persons from harming themselves or others," RSA 135-C:1, I(c) (1990), we hold that a petitioner is not required to prove that the specific act of dangerousness alleged in a petition for involuntary admission is caused by mental illness. We therefore affirm.

*Affirmed.*

All concurred.