Merrimack County Probate Court
No. 2003-020

## IN RE SANDRA H.

Argued: November 12, 2003
Opinion Issued: March 12, 2004

*Peter W. Heed*, attorney general (*Anne M. Edwards*, associate attorney general, on the brief and orally), for the State.

*Gordon R. Blakeney, Jr.*, of Concord, by brief and orally, for the respondent.

DALIANIS, J. The respondent, Sandra H., appeals her involuntary commitment to New Hampshire Hospital (NHH) by the Merrimack County Probate Court (*Hampe*, J.) on the grounds that: (1) she was denied her constitutional right to a trial by jury; (2) the statutory waiver of physician-patient privilege violated her right to equal protection; (3) the probate court erred in denying her motion to dismiss for non-availability of the psychiatrist's report; and (4) the probate court had insufficient evidence to justify the necessity and length of her commitment. *See* RSA ch. 135-C (1996 & Supp. 2002). We affirm.

On December 12, 2002, NHH filed an involuntary commitment petition pursuant to RSA chapter 135-C. In accordance with RSA 135-C:40, a court-appointed psychiatrist prepared an independent evaluation of the respondent, finding that she was "suffering from mood disorder not otherwise specified, with psychotic features" and that "there's a potential serious likelihood of danger to herself." Additionally, the respondent's treating psychiatrist testified that he diagnosed her with "a major depressive disorder with psychotic features" and that she was a danger to herself and possibly a danger to others. Several nurses from the NHH treatment team and a friend of the respondent also testified as to her

mental incapacity. Based upon the evidence presented, the probate court ordered that the respondent be committed for a period not to exceed two years.

*I. Jury Trial*

The respondent argues that the probate court erred in denying her motion for a jury trial for her involuntary civil commitment proceeding under the State Constitution. N.H. CONST. pt. I, art. 15.

■ The State Constitution guarantees the right of trial by jury in all cases where the right existed at common law at the time of its adoption in 1784. *State v. Ray*, 63 N.H. 406, 407 (1885). The right does not extend, however, to special, statutory or summary proceedings unknown to the common law. *Opinion of the Justices (SLAPP Suit Procedure)*, 138 N.H. 445, 450 (1994).

For the respondent to have a constitutional right to trial by jury, the practice in New Hampshire at the time of the adoption of the New Hampshire Constitution must have been to summon juries to determine involuntary civil commitments. *See Ray*, 63 N.H. at 407. There are few jurisdictions where the practice at the time of the adoption of their state constitutions was to summon juries to determine the insanity of a person. *See, e.g., Matter of Mills*, 585 P.2d 1143, 1144 n.2 (Or. Ct. App. 1978). Sandra H. did not offer any evidence to support her assertion that civil commitments were determined by jury trial *in New Hampshire* prior to 1784. We also have been unable to find any documentation supporting her argument.

Throughout the 1700s, laws were passed in New Hampshire ordering, upon the request of "Relations or Friends," that it be within the "power of the Judge for the Probate of Wills . . . to direct the Select Men" of the local town "to make Inquisition" into whether a person was *"non compos"* (insane). Laws 1702-1745, ch. 2; Laws 1745-1774, ch. 8; Laws 1776-1784, ch. 1. With consideration for the "Select Men's" finding, the probate judge determined whether a person was *non compos*. Laws 1776-1784, ch. 1. The probate judge would then assign a guardian to care for the person and his or her estates. *Id.* The practice throughout the 1700s, until the adoption of the New Hampshire Constitution, was that the probate judge determined the insanity of a person with the aid of the local "Select Men," not with the aid of a jury.

■ Moreover, we have previously held that, because it is a special statutory proceeding, there is no constitutional requirement for a trial by jury in the commitment of insane or mentally ill persons. *In re Moulton*, 96

N.H. 370, 372 (1950). Accordingly, we conclude that the respondent had no right to a jury trial under the State Constitution. *See Opinion of the Justices*, 138 N.H. at 450; *In re Moulton*, 96 N.H. at 372; *see also In re Jones*, 339 So. 2d 1117, 1118 (Fla. 1976); *In re Easton*, 133 A.2d 441, 449 (Md. 1957).

The respondent argues that her right to equal protection was violated because criminal defendants are entitled to a jury trial while involuntary civil committees are not. In her brief, however, the respondent does not sufficiently argue her equal protection claim, making only a "passing reference" to a California intermediate court opinion in which the State of California had conceded the constitutional argument. Thus, we consider the equal protection argument waived. *See State v. Hermsdorf*, 135 N.H. 360, 365 (1992).

## II. Physician-Patient Privilege

The respondent asserts that the statutory waiver of the physician-patient privilege for proceedings or hearings conducted pursuant to RSA 135-C:27-:54 violates her right to equal protection under the State and Federal Constitutions. *See* RSA 329:26 (Supp. 2003); RSA 330-A:32 (Supp. 2003).

Federal equal protection offers no greater protection than our State equal protection guarantee. *Estate of Robitaille v. N.H. Dep't of Rev. Admin.*, 149 N.H. 595, 596 (2003); *LeClair v. LeClair*, 137 N.H. 213, 221-22 (1993). We have held, in accordance with the United States Supreme Court, that the equal protection guarantee is "essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *State v. LaPorte*, 134 N.H. 73, 76 (1991). In applying an analysis identical to that used by federal courts, we have held that a "classification must not be arbitrary, but must reasonably promote some proper object of public welfare or interest." *Opinion of the Justices*, 144 N.H. 374, 384 (1999).

"In considering an equal protection challenge under our State Constitution, we must first determine the appropriate standard of review by examining the purpose and scope of the State-created classification and the individual rights affected." *Estate of Robitaille*, 149 N.H. at 596; *see Boehner v. State*, 122 N.H. 79, 83-84 (1982). Classifications based upon suspect classes or affecting a fundamental right "are subject to the most exacting scrutiny; to pass constitutional muster, they must be justified by a compelling governmental interest and must be necessary to the accomplishment of its legitimate purpose." *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984); *see also Estate of Robitaille*, 149 N.H. at 596; *LeClair*, 137

N.H. at 222. Classifications involving "important substantive rights" must be reasonable and rest upon some ground of difference having a fair and substantial relation to the object of the legislation. *Petition of Hamel*, 137 N.H. 488, 491 (1993). We have applied this "intermediate review" to a broader category of rights than do the federal courts, although our analysis when applying this level of review is the same. Finally, absent some infringement of a fundamental right, an important substantive right, or application of some recognized suspect classification, the constitutional standard to be applied is that of rationality. *Valley Bank v. State*, 115 N.H. 151, 154-55 (1975).

On occasion, our past decisions have articulated an equal protection test where the "first inquiry concerning equal protection is whether persons similarly situated are being treated differently under the statutory law." *Gazzola v. Clements*, 120 N.H. 25, 29 (1980). Holding that persons who are not similarly situated need not be treated the same under the law is a shorthand way of explaining the equal protection guarantee. Whether applying a strict scrutiny, intermediate, or rational basis standard of review, we, as well as the federal courts, determine whether differences between the classes justify disparate treatment under the law.

The Federal and State Equal Protection Clauses do not "demand that a statute necessarily apply equally to all persons or require things which are different in fact to be treated in law as though they were the same." *Michael M. v. Sonoma County Superior Court*, 450 U.S. 464, 469 (1981) (quotation omitted). Where a classification "realistically reflects the fact that the [two groups] are not similarly situated in certain circumstances," *id.*, and the legislation's differing treatment of the groups is sufficiently related to a government interest, it will survive an equal protection challenge. *See id.* at 472-73.

In some of our past decisions where we initially evaluated whether persons were similarly situated, we utilized different language than do the federal courts to achieve the same result under a rational basis test. Our "similarly situated" analysis focused on the dissimilarities of the classes, which were self-evidently a basis for reasonable classification. *See Walker v. Exeter Region Co-op. School Dist.*, 284 F.3d 42, 44, (2002); *see also Emond v. N.H. Dep't of Labor*, 146 N.H. 230, 231 (2001); *McGraw v. Exeter Region Coop. Sch. Dist.*, 145 N.H. 709, 712 (2001). In those decisions, we discussed the differences between the classes and concluded that they were not similarly situated, which justified the difference in treatment under the law. *See McGraw*, 145 N.H. at 712. We were applying the same equal protection standard of review, *i.e.*, rational basis, as the federal courts would apply. *See id.*; *Walker*, 284 F.3d at 46. Thus, although

the language in some of our past decisions varied from that used by federal courts, our State equal protection analysis is identical.

Having clarified our analysis under the State Constitution, we now address the respondent's claim under the State Constitution, citing federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

The respondent contends that because waiver of the physician-patient privilege is not automatic for criminal committees, as it is for involuntary civil committees under RSA 329:26 and RSA 330-A:32, her right to equal protection has been violated. The classification here does not involve a suspect class, a fundamental right or an "important substantive right"; thus, we apply the rational basis test. *See Estate of Robitaille*, 149 N.H. at 596-97.

The differences between civil committees and criminal committees rationally justify the classification. *See Glatz v. Kort*, 807 F.2d 1514, 1522 (10th Cir. 1986); *cf. Jones v. United States*, 463 U.S. 354, 370 (1983); *In re Richard A.*, 146 N.H. 295, 298-99 (2001). A criminal committee, having been acquitted by reason of insanity, has already been subjected to a trial at which his or her mental illness was admitted or proven. *See* RSA 651:8-b (1996); *In re Kathleen M.*, 126 N.H. 379, 384 (1985); *Glatz*, 807 F.2d at 1522. In contrast, prior to involuntary civil commitment proceedings or hearings pursuant to RSA 135-C:27-:54, there may not have been any determination of mental illness of a person sought to be involuntarily committed.

The physician-patient privilege of an involuntary civil committee is waived to assist in the production of evidence to determine whether the person is mentally ill and to evaluate the likelihood of danger to self or others. *See In re Kathleen M.*, 126 N.H. at 385. Such evidence may already have been provided at the criminal trial of a criminal committee. It is reasonable to treat the two groups differently to ensure the State's legitimate interest in the proper evaluation of the mental condition and the dangerousness of an involuntary civil committee.

█ We have previously held that where the legislature did not create an exception to the physician-patient privilege under RSA 329:26 and RSA 330-A:32, there was not a *per se* exemption for involuntary commitment proceedings. *In re Kathleen M.*, 126 N.H. at 383. The legislature subsequently amended the statutes to explicitly except involuntary commitment proceedings and hearings conducted pursuant to RSA 135-C:27-:54. Because there is a rational basis for treating involuntary civil committees and criminal committees differently, we conclude that neither

RSA 329:26 nor RSA 330-A:32 violate the respondent's right to equal protection. *See Glatz*, 807 F.2d at 1522.

The United States Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *Estate of Robitaille*, 149 N.H. at 596-97; *Walker*, 284 F.3d at 44. Accordingly, we reach the same result under the United States Constitution as we do under the State Constitution.

*III. Psychiatrist's Report*

The respondent contends that the probate court erred in denying her motion to dismiss because the psychiatrist's report was not made available to her the day before the hearing pursuant to RSA 135-C:41 (Supp. 2002).

■ RSA 135-C:41 requires that the psychiatrist's report be "made available to the person sought to be admitted" on the "day before the hearing." Assuming without deciding that the report was not made available as required by the statute, the only relief requested by the respondent was dismissal of the petition. She sought no alternative remedy, did not argue that she suffered any prejudice caused by the late receipt of the report, and went forward with the hearing. Under these circumstances, we conclude that dismissal would not have been the appropriate remedy. Accordingly, we find no reversible error.

*IV. Length and necessity of the commitment*

Finally we address the respondent's argument that the probate court had insufficient evidence not only to order her committed, but also to commit her for a longer period of time than the psychiatrist's report recommended.

■ The involuntary admission provisions of RSA chapter 135-C require the petitioner to prove, by clear and convincing evidence, that the respondent's present mental condition as a result of mental illness presents a potentially serious likelihood of danger to the respondent or others. *In re Perley*, 137 N.H. 209, 212 (1993). We will uphold the probate court's ruling unless no rational fact-finder could have made the findings by clear and convincing evidence. *Id.*

■ The examining psychiatrist testified that the respondent posed a potentially serious likelihood of danger to herself and recommended involuntary commitment for one year. The respondent's treating physician and several nurses from NHH testified regarding her aggressive, dangerous and suicidal behavior and recommended involuntary

commitment for two years. Additionally, a friend testified to her poor mental capacity. There was sufficient evidence for a rational fact-finder to find by clear and convincing evidence that the respondent presented a potentially serious likelihood of danger to herself or others.

Additionally, it was within the probate court's discretion to order a commitment not to exceed two years. The respondent argues that because RSA 135-C:45 requires the probate court to make a specific finding that alternative treatment to involuntary commitment would not be in the best interest of the person and the community in order to overrule an examining psychiatrist's opinion that the person not be committed, the probate court must make a similar finding when ordering commitment for a longer period of time than recommended by the examining psychiatrist.

This court is the final arbiter of the meaning of a statute, as expressed in the words of the statute itself. *Appeal of HCA Parkland Medical Ctr.*, 143 N.H. 92, 94 (1998). When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used. *State v. Bernard*, 141 N.H. 230, 233 (1996). When the language used in the statute is clear and unambiguous, its meaning is not subject to modification by judicial construction. *State v. Nickerson*, 147 N.H. 12, 13 (2001).

RSA 135-C:45 unambiguously states that the probate court may make an order notwithstanding the expert testimony without making any additional specific findings. *See* RSA 135-C:45, I (court may order release or outpatient treatment of the person notwithstanding expert testimony recommending commitment). The legislature also made clear that when the examining psychiatrist finds involuntary admission unnecessary, the judge may still order commitment if an additional specific finding is made. *Id.* The statute does not require additional specific findings under any other circumstances. *See id.*

■ Courts can neither ignore the plain language of legislation nor add words which the lawmakers did not see fit to include. *Bernard*, 141 N.H. at 233. Because we will not add words or requirements to this statute, we hold that the probate court did not need to make an additional specific finding to order the respondent to be committed for no more than two years. After review of the record, we conclude that there was sufficient evidence to support the probate court's order.

*Affirmed.*

BRODERICK, C.J., and NADEAU and DUGGAN, JJ., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.