999 A.2d 210 (2010)
In re Search Warrant for Medical Records of C.T.
No. 2009-208.
Supreme Court of New Hampshire.
Argued: October 15, 2009.
Opinion Issued: May 6, 2010.
*213 Orville B. Fitch II, acting attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.
Sheehan Phinney Bass + Green, P.A., of Manchester (James Q. Shirley and another on the brief, and Mr. Shirley orally), for the defendant.
CONBOY, J.
The defendant, Exeter Hospital, Inc. (Hospital), appeals the November 24, 2008 order of the Portsmouth District Court (Gardner, J.) requiring the Hospital to turn over the medical records of C.T. pursuant to a search warrant. Although the Hospital complied with the warrant, it seeks clarification of its obligations in the future to produce a patient's medical records in response to a search warrant without the patient's authorization or consent. We affirm, but set forth additional procedures to be followed when the State seeks privileged medical records by search warrant.
The record evidences the following facts. At approximately 1:00 a.m. on November 19, 2008, Trooper Brian Gacek of the New Hampshire State Police received a call to investigate a single-vehicle accident in South Hampton. The driver, C.T., had failed to negotiate a curve, and had driven off the road into a stone wall. C.T. appeared intoxicated. He was bleeding from his face, but standing on his own. After receiving treatment at the scene, C.T. was taken to the Hospital for further evaluation and treatment, where his blood was drawn in connection with his care. C.T. was subsequently transported to the Rockingham County jail. Later that morning, to permit proper care of C.T.'s medical needs, the Hospital called the jail and advised jail officials that C.T. had a broken ankle.
C.T. was charged with several offenses, including aggravated driving while intoxicated causing a collision that resulted in serious bodily injury. See RSA 265-A:3, I(b) (Supp.2009). Trooper Gacek applied to the district court for a search warrant, submitting an affidavit reciting the foregoing facts and asserting that a broken ankle constitutes serious bodily injury. The search warrant application sought blood samples and associated toxicology reports, as well as medical records generated during C.T.'s treatment at the Hospital on the morning of November 19. The district court granted the warrant application.
The trooper served the warrant on the Hospital's laboratory and medical records personnel on November 19 after 10 p.m. Although the blood test and laboratory results were made available immediately, the Hospital's medical records attendant *214 told Trooper Gacek that the Hospital normally did not gather medical records at that late hour. The trooper indicated to the attendant that there was "no hurry" because he did not need the medical records right away. Counsel for the Hospital was not able to reach Trooper Gacek until November 24, the day the State filed an Ex Parte Request for Finding of Contempt and Order to Produce. The Hospital produced the subject records the same day, but subsequently objected to the State's request and moved for an order prohibiting the State from routinely using search warrants to obtain patient medical records. The district court ordered the Hospital to comply with the search warrant, but did not grant the State's motion for contempt. The Hospital's motion was denied.
On appeal, the Hospital argues that the trial court erred in requiring it to produce C.T.'s medical records. Relying substantially on In re Grand Jury Subpoena (Medical Records of Payne), 150 N.H. 436, 839 A.2d 837 (2004), the Hospital first asserts that a search warrant issued ex parte deprives the Hospital and its patients of notice and an opportunity to contest production of such records. It maintains that it has statutory and ethical obligations to safeguard its patients' confidential records, and contends that issuance of a search warrant for such records places it in an untenable position: it must either turn over the records and violate its obligations to its patients, or refuse to provide the records and face contempt charges. The Hospital argues more broadly that search warrants are not an appropriate means for the State to obtain medical records because, in contrast to other types of evidence commonly secured by search warrants, medical records are not susceptible to concealment or destruction and therefore their production is more properly sought by subpoenas duces tecum. The urgency of a search warrant, it argues further, disrupts the Hospital's operations, and requires unnecessary emergency review and response. Relying on Payne, the Hospital asserts that obtaining search warrants for medical records improperly relieves the State of its obligation to demonstrate a lack of alternative sources for the evidence it seeks. It further contends that an opportunity to object prior to disclosure is critical because post-disclosure relief, including preclusion of admissibility, is insufficient: the chilling effect on physician-patient communications would already have occurred. Thus, the Hospital argues that when the State seeks privileged medical records, the protections we set out in Payne should be required.
The State first counters that the case is moot. The State further argues that because a warrant is issued only after an independent magistrate finds probable cause to believe the records contain evidence of a crime, and because physicians have a statutory duty to report any injury the physician "believes to have been caused by a criminal act," RSA 631:6 (2007), the physician-patient privilege is abrogated. The State also maintains that a search warrant may be challenged only after it is executed, and therefore a hospital that produces medical records in response to a search warrant faces no civil liability as a result of compliance. The State asserts that because the legislature has not modified either the privilege statute or the warrant statute to provide protections for privileged materials sought by a search warrant, privileged materials are no different from other materials subject to production in response to a search warrant. It contends that the procedures governing search warrants are more than sufficient to protect patient confidentiality in the criminal prosecution context, and thus, no protections are required beyond the *215 magistrate's finding of probable cause. In sum, the State asserts that search warrants trump the protections that Payne held applicable to the physician-patient privilege in the context of grand jury subpoenas.
We first reject the State's suggestion that we should dismiss the Hospital's appeal as moot because the documents have been produced. The State itself points out that a warrant may be challenged only after its execution. By its pleadings, the Hospital properly preserved its objection to the trial court's order requiring production of C.T.'s medical records. The Hospital's compliance with the search warrant and the subsequent court order does not render this appeal moot. See, e.g., In re Subpoena Duces Tecum, 228 F.3d 341, 345 (4th Cir.2000); In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 853 (9th Cir.1991).
This case presents an issue of first impression in New Hampshire: how to resolve the tension between the well-established law governing search warrants and the statutory protection afforded the physician-patient privilege. A search warrant is "[a] judge's written order authorizing a law-enforcement officer to conduct a search of a specified place and to seize evidence." Black's Law Dictionary 1470 (9th ed. 2009). "We have interpreted part I, article 19 [of the New Hampshire Constitution] as requiring an objective determination of probable cause by a neutral and detached magistrate," as a prerequisite to issuance of a search warrant. State v. Canelo, 139 N.H. 376, 380, 653 A.2d 1097 (1995) (quotation and citations omitted). "To establish probable cause, the affiant need only present the magistrate with sufficient facts and circumstances to demonstrate a substantial likelihood that the evidence or contraband sought will be found in the place to be searched." State v. Zwicker, 151 N.H. 179, 185, 855 A.2d 415 (2004). A magistrate may issue a warrant allowing police "to search for and seize any property which is . . . [e]vidence of the crime to which the probable cause upon which the search warrant is issued relates." RSA 595-A:1 (2001).
The State cites State v. Skinner, 10 So.3d 1212 (La.2009), King v. State, 276 Ga. 126, 577 S.E.2d 764 (2003), State v. Nelson, 283 Mont. 231, 941 P.2d 441 (1997), and Farrall v. State, 902 So.2d 820 (Fla.Dist.Ct.App.2004), for the proposition that obtaining a search warrant affords greater procedural protection than issuing a subpoena, and, therefore, no additional protections are required. All four cases, however, center upon a patient's asserted constitutional right to privacy in medical records. This case does not raise that issue. Rather, we address here the interplay between the law governing search warrants and the statute governing the physician-patient privilege.
The privilege "was created in our State by statutory enactment in 1969, Laws 1969, ch. 386, and has been incorporated into the rules of evidence, N.H. R. Ev. 503." State v. Elwell, 132 N.H. 599, 603, 567 A.2d 1002 (1989) (decided under prior law). "By creating the physician-patient privilege, the legislature sought to protect patient health by encouraging patients to fully disclose all information about their injuries or ailments to medical providers, however personal or embarrassing, for the purpose of receiving complete treatment." Payne, 150 N.H. at 439, 839 A.2d 837. "[The physician-patient] privilege belongs to the patient, who may prevent the physician from revealing statements whose confidentiality the patient wishes to preserve." Nelson v. Lewis, 130 N.H. 106, 109, 534 A.2d 720 (1987). "Communications between a physician and a patient are privileged. This includes information, *216 such as medical reports or test results, generated by a physician as a consequence of the confidential relationship with his patient." Elwell, 132 N.H. at 604-05, 567 A.2d 1002. RSA 329:26 (Supp. 2009), the legislature's latest codification of the physician-patient privilege, provides in pertinent part:
The confidential relations and communications between a physician or surgeon licensed under provisions of this chapter and the patient of such physician or surgeon are placed on the same basis as those provided by law between attorney and client, and, except as otherwise provided by law, no such physician or surgeon shall be required to disclose such privileged communications.
"In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." State v. Dodds, 159 N.H. 239, 244, 982 A.2d 377 (2009). "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." Soraghan v. Mt. Cranmore Ski Resort, 152 N.H. 399, 401, 881 A.2d 693 (2005). "We will neither consider what the legislature might have said nor add words that it did not see fit to include. Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent." Dodds, 159 N.H. at 244, 982 A.2d 377 (citations omitted).
The physician-patient privilege statute includes no exception for access to or use of medical records in connection with criminal prosecutions for driving while intoxicated. See In re Kathleen M., 126 N.H. 379, 383, 493 A.2d 472 (1985) (analyzing exceptions to privilege under RSA 329:26). The statute does, however, specifically provide for the use of certain medical results in connection with criminal prosecutions for driving while intoxicated:
This section shall . . . not apply to the release of blood or urine samples and the results of laboratory tests for drugs or blood alcohol content taken from a person for purposes of diagnosis and treatment in connection with the incident giving rise to the investigation for driving a motor vehicle while such person was under the influence of intoxicating liquors or controlled drugs. The use and disclosure of such information shall be limited to the official criminal proceedings.
RSA 329:26. The statute also allows for use of privileged information in various proceedings unrelated to criminal prosecutions. See id. ("This section shall not apply to investigations and hearings conducted by the board of medicine under RSA 329, any other statutorily created health occupational licensing or certifying board conducting licensing, certifying, or disciplinary proceedings or hearings conducted pursuant to RSA 135-C:27-54 or RSA 464-A.").
"[T]he legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect. We also presume that the legislature does not enact unnecessary and duplicative provisions." In re Guardianship of Williams, 159 N.H. 318, 323, 986 A.2d 559 (2009) (quotation omitted). The fact that the legislature specifically excepted from the privilege certain samples and test results for use in prosecutions of driving while intoxicated charges leads to the corollary conclusion that the legislature intended to retain the privilege for other medical records in such circumstances.
Given the legislature's silence as to the treatment due privileged records sought by search warrant, the trial court's *217 order was in accordance with the law governing search warrants, and we affirm. However, in light of the legislative protections afforded the physician-patient privilege, we cannot read the legislature's silence as effectively vitiating the privilege for other medical records upon a showing of probable cause. Because we have a "continuing obligation to carefully safeguard the statutory protection afforded the confidential relationship between physicians and patients," Payne, 150 N.H. at 448, 839 A.2d 837, we will consider what safeguards should be required in the future when the State seeks privileged medical records by a search warrant.
In Payne, which involved a successful challenge to three instances where the State sought medical records by subpoena, two issued by a grand jury and one by the State, we held that certain procedural protections were necessary to reconcile the privilege with the goals of law enforcement. Id. at 447-48, 839 A.2d 837. We explained that "any intrusion into the confidential sphere must be circumspect to honor the legislature's design to preserve patient health," id. at 444, 839 A.2d 837, and therefore, the privilege may yield when: "(1) a statute specifically authorizes disclosure; (2) a sufficiently compelling countervailing consideration is identified; or (3) disclosure is essential under the specific circumstances of the case." Id. at 440-41, 839 A.2d 837 (citations omitted). "To establish essential need, the party seeking the privileged records must prove both that the targeted information is unavailable from another source and that there is a compelling justification for its disclosure." Id. at 442, 839 A.2d 837.
"The investigation of felonies and the search for relevant evidence constitute a compelling justification to support invasion of the privilege." Id. The State, however, "must still show that it has no reasonably available alternative sources it can use at trial to prove the `serious bodily injury' element of felony aggravated driving while intoxicated." Id. "Invasion of the privilege can never be justified just because a defendant's medical records might be the best evidence of `serious bodily injury' or provide the least burdensome means to pursue a felony prosecution." Id. at 443, 839 A.2d 837.
In determining whether a reasonable alternative source of information is available to the State for it to pursue criminal prosecution of the defendants without access to their medical records, we consider: (1) whether the alternative evidence is admissible at trial; (2) whether the alternative evidence is sufficient to overcome a motion for directed verdict; and (3) whether the State has made adequate efforts to investigate alternative sources.
Id. at 442-43, 839 A.2d 837.
In addition to requiring proof that the information is essential, we stated that, "for a defendant to protect his statutory privilege, the State must furnish him with adequate notice of its effort to obtain his medical records. Therefore, any subpoena issued to a hospital or medical provider to obtain privileged medical records must also be served upon the individual whose records are sought." Id. at 447, 839 A.2d 837. Moreover, the defendant must have an opportunity to oppose disclosure: "Either the defendant or the medical provider or both may file a motion to quash or otherwise object to disclosure of the requested records." Id. at 448, 839 A.2d 837.
[I]f a party objects to the production of medical records and the State can establish a legal right to override the physician-patient privilege, the trial court is required to conduct an in camera review. In the course of that review, the *218 trial court should make certain that irrelevant and non-responsive information is not released. We emphasize that only information necessary to prove serious bodily injury should be disclosed. Other information, such as the defendant's medical history and statements to his physician, would not normally be revealed.
Id.; see Desclos v. S. N.H. Med. Ctr., 153 N.H. 607, 615-19, 903 A.2d 952 (2006) (requiring Payne protections for discovery of privileged psychotherapy records).
We recognize the essential differences between search warrants and subpoenas:
[T]he immediacy and intrusiveness of a search and seizure conducted pursuant to a warrant demand the safeguard of demonstrating probable cause to a neutral judicial officer before the warrant issues, whereas the issuance of a subpoena initiates an adversary process that can command the production of documents and things only after judicial process is afforded.
Subpoena Duces Tecum, 228 F.3d at 348. But we conclude that the physician-patient privilege is no less valid, and its rationale is no less important, because a magistrate has found probable cause to believe that the privileged records contain evidence of a crime. The immediacy and intrusiveness of searches, combined with the potential for irreparable injury to privilege-holders, lead us to conclude that when privileged medical records are sought by search warrant, at least a minimal level of procedural protection is required. See Matter of 636 South 66th Terrace, 835 F.Supp. 1304, 1306 (D.Kan.1993) ("an invasion of the attorney-client privilege through a search and seizure generates an irreparable injury to the possessor of the privilege").
We note that a number of other jurisdictions impose procedural protections where privileged documents are sought by search warrant. As the State has recognized, some jurisdictions have established protections legislatively. See 42 U.S.C.A. § 2000aa-11(a) (2003); 28 C.F.R. § 59.4(b)(1) (2009); Cal.Penal Code § 1524(c), (i) (Deering 2008); Mass. Gen. Laws ch. 276 § 1 (2009). Other jurisdictions protect privileges, including, most commonly, the attorney-client privilege, by various common-law procedures. See, e.g., In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d at 858; In re Impounded Case (Law Firm), 840 F.2d 196, 200-02 (3d Cir.1988); 636 South 66th Terrace, 835 F.Supp. at 1306; Law Off. of Bernard D. Morley v. MacFarlane, 647 P.2d 1215, 1223-29 (Colo.1982) (Quinn, J. specially concurring); State v. DeMotte, 669 A.2d 1331, 1334 (Me.1996); State v. Charlesworth, 151 Or.App. 100, 951 P.2d 153, 164-66 (1997); In re Investigating Grand Jury, 527 Pa. 432, 593 A.2d 402, 405-06 (1991); In Re Search Warrant for 2045 Franklin, Denver, 709 P.2d 597, 599-601 (Colo.App.1985). Commentators also argue that some measure of privilege protection above the probable cause standard is required in the interests of justice, and suggest various procedures. See, e.g., Bloom, The Law Office Search: An Emerging Problem and Some Suggested Solutions, 69 Geo. L.J. 1 (1980); Note, The Assault on the Citadel of Privilege Proceeds Apace: The Unreasonableness of Law Office Searches, 49 Fordham L.Rev. 708 (1981); Comment, Colorado's Approach to Searches and Seizures in Law Offices, 54 U. Colo. L.Rev. 571 (1983); Comment, The Search and Seizure of Privileged Attorney-Client Communications, 72 U. Chi. L.Rev. 729 (2005).
We are not persuaded by the State's argument that the physician-patient privilege is abrogated here based upon the physician reporting statute. In Payne, we stated, "We need not decide whether the *219 reporting statute would allow the State to seek an injunction or other court remedy to access privileged records in the event it believes a medical provider has failed to comply with the statute's reporting mandate as that issue is not before us." Id. at 441-42, 839 A.2d 837. The State asserts that the issue is before us now because the district court's issuance of a search warrant necessarily includes a determination of probable cause to believe that C.T.'s medical records contain evidence that he drove while intoxicated and thereby caused a collision resulting in serious bodily injury. Such an injury, the State argues, must inevitably be disclosed pursuant to the reporting statute, thereby abrogating the privilege. We disagree with the State's analysis.
The physician reporting statute provides in pertinent part that:
a person is guilty of a misdemeanor if, having knowingly treated or assisted another for a gunshot wound or for any other injury he believes to have been caused by a criminal act, he fails immediately to notify a law enforcement official of all the information he possesses concerning the injury.
RSA 631:6, I (2007). Thus, medical providers who treat injuries they believe were caused by criminal acts must promptly report to law enforcement all information they possess regarding the injuries. See Payne, 150 N.H. at 441, 839 A.2d 837. A breach of this obligation can result in criminal liability. See id. "This obligation may require medical providers to divulge information otherwise privileged under RSA 329:26. It does not, however, provide the State with unilateral authority to subpoena privileged records when it believes that medical providers may have breached their reporting obligations." Id.; cf. State v. Summers, 142 N.H. 429, 432-33, 702 A.2d 819 (1997) ("The legislature revoked the privilege . . . by providing that `information communicated to a practitioner in an effort unlawfully to procure a controlled drug, or unlawfully to procure the administration of any such drug, shall not be deemed a privileged communication.' RSA 318-B:21 (1995)." (brackets omitted)).
Given that the Hospital has not challenged the sufficiency of the search warrant, we assume the trial court properly concluded that there was a substantial likelihood of finding evidence in C.T.'s November 19, 2008 medical records relevant to C.T.'s alleged crimes. However, such a finding does not support a further conclusion that a medical provider has failed to comply with the statute's reporting mandate. See Payne, 150 N.H. at 441-42, 839 A.2d 837. There is no evidence in this case that any medical provider failed to report an injury the provider believed to be the result of criminal activity. Indeed, the Hospital reported the defendant's injury to the jail for treatment purposes. Furthermore, even if there were evidence of a medical provider's noncompliance with the reporting statute, such would not, standing alone, warrant piercing the physician-patient privilege to obtain medical records for use in a prosecution against the patient.
The State argues that we have found the prosecution of felonies to present a "sufficiently compelling countervailing consideration," id. at 440, 839 A.2d 837, to warrant piercing the privilege. However, a close examination of our precedent establishes that the privilege has yielded only when disclosure of the privileged information is essential in light of the countervailing consideration. See, e.g., Desclos, 153 N.H. at 615, 903 A.2d 952 ("The psychotherapist-patient privilege must yield when disclosure of the information concerned is considered essential." (quotation omitted)); Elwell, 132 N.H. at 605-06, 567 A.2d 1002 (although "the physician-patient privilege is not absolute and will yield when the *220 disclosure of information is essential," where other sources of information are available, the effective enforcement of drunk driving laws, though compelling, is not grounds for piercing the privilege); McGranahan v. Dahar, 119 N.H. 758, 764, 408 A.2d 121 (1979) ("The attorney-client privilege may not be absolute when there is a compelling need for the information and no alternative source is available."); State v. Farrow, 116 N.H. 731, 733, 366 A.2d 1177 (1976) (criminal defendant may pierce therapist-patient privilege only as to materials found through in camera review "to be essential and reasonably necessary to permit counsel adequately to cross-examine for the purpose of showing unreliability or bias"). Compare In re Kathleen M., 126 N.H. at 385-87, 493 A.2d 472 (holding mere conclusory statement that treating physician offers best evidence as to dangerousness insufficient to establish necessity where other sources of information were potentially available), with State v. Kupchun, 117 N.H. 412, 415-16, 373 A.2d 1325 (1977) (finding that without disclosure of privileged records as best information available bearing on defendant's dangerousness and mental condition, the State would have been "virtually deprived" of evidence to present to trial court in recommitment hearing). Thus, our established law governing piercing the privilege, concededly outside the warrant context, has ultimately focused on "essential need." The State has not asserted essential need in this case.
Accordingly, we exercise our supervisory powers to provide guidance to trial courts and parties as to a uniform and fair process to be applied in future cases. See Payne, 150 N.H. at 447, 839 A.2d 837; see also State v. Barnett, 147 N.H. 334, 337, 789 A.2d 629 (2001) (electing "to exercise supervisory jurisdiction over our trial courts to ensure the fair administration of justice"); Boody v. Watson, 64 N.H. 162, 169-70, 9 A. 794 (1886) (noting that Supreme Court has broad and comprehensive supervisory powers). We instruct that, henceforth, any search warrant for privileged medical records shall order the hospital or medical provider to comply within a reasonable time by producing the records under seal for in camera review by the trial court. The trial court shall then determine the manner by which the patient shall be provided notice that such records were produced and shall give the patient and hospital or medical provider an opportunity to object to their disclosure. Upon objection, the State must demonstrate "essential need" for the information contained in the record, i.e., the State must prove both that the information is unavailable from another source and that there is a compelling justification for its disclosure. Cf. Payne, 150 N.H. at 442, 839 A.2d 837.
We recognize that, ideally, the balancing of interests in this manner is a policy determination best suited for the legislature. But in the absence of legislative expression, we must address the legitimate concerns of hospitals and medical providers and meet our responsibility to safeguard the physician-patient privilege. See In the Matter of LaRue & Bedard, 156 N.H. 378, 381, 934 A.2d 577 (2007) (the legislature is free to amend the pertinent statute as it sees fit). Accordingly, while we affirm the trial court's order in this case, we hold that the procedural protections we have outlined herein shall apply to all future efforts by the State to obtain privileged medical records by search warrant.
Affirmed.
BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.