# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0032, <u>In re Search Warrant for Medical Records of W.M.</u>, the court on December 23, 2016, issued the following order:**

Having considered the State's brief, the memorandum filed by W.M., the <u>amicus</u> <u>curiae</u> brief filed by the Appellate Defender Program, the State's reply brief, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We reverse.

The State appeals the order of the Circuit Court (<u>Carroll</u>, J.) denying its request for a search warrant to obtain hospital records of W.M., arguing that the court erred in concluding that the State failed to demonstrate probable cause and "essential need" for the records.

An objective determination of probable cause by a neutral and detached magistrate is a prerequisite to the issuance of a search warrant.  <u>State v. Canelo</u>, 139 N.H. 376, 380 (1995).  "To establish probable cause, the affiant need only present the magistrate with sufficient facts and circumstances to demonstrate a substantial likelihood that the evidence or contraband sought will be found in the place to be searched."  <u>State v. Zwicker</u>, 151 N.H. 179, 185 (2004).  However, when the State seeks records protected by the physician-patient privilege, it also "must demonstrate 'essential need' for the information contained in the record, <u>i.e.</u>, the State must prove both that the information is unavailable from another source and that there is a compelling justification for its disclosure."  <u>In re Search Warrant (Med. Records of C.T.)</u>, 160 N.H. 214, 226 (2010).

The record shows that on August 11, 2015, Officer Glidden applied for a search warrant for W.M.'s Concord Hospital medical records from July 27, 2015 to July 29, 2015.  In his supporting affidavit, Glidden stated that on July 27, 2015, he responded to the site of a motor vehicle accident, where he observed a single, abandoned pick-up truck with substantial driver-side damage and a missing front left wheel.  Glidden spoke to an eyewitness who, after observing the accident, saw a man removing a case of beer from the vehicle.  The witness asked the man if he was okay, and the man answered, "[W]e're fine," before running into the woods.  Officer Sullivan contacted the owner of the truck, who informed the officer that he had allowed W.M. to borrow the truck to purchase beer, and that W.M. drove away in the truck with a passenger.

Glidden then reported to W.M.'s residence. On arrival, W.M.'s father told the officer that he did not know where his son was, and that he would have to locate his cell phone to call him. After looking for the cell phone, the father returned and said, "[H]ere he is," inviting the officer into the living room, where W.M. was lying in a recliner under a blanket. W.M. denied driving the truck or being involved in the accident.

Two days after the accident, the truck owner informed Glidden that he had reported the accident to his insurance company, and that his insurance agent informed him that someone in W.M.'s residence advised the agent that W.M. was brought to the hospital for a back injury. The passenger's roommate informed the officer that W.M.'s mother had picked them up after the accident, that W.M. had injured his back in the accident, and that W.M. was brought to Concord Hospital. Glidden contacted W.M.'s mother, who told him that she found W.M. lying on the floor of their house on the night of the accident but could provide no further information.

Based upon this affidavit, the trial court granted the search warrant application. Following the procedure set forth in In re Search Warrant, the court ordered the hospital to provide the records to the court under seal and notified W.M. that the records had been delivered to the court for potential in camera review. See In re Search Warrant, 160 N.H. at 226. W.M. objected to the disclosure on the basis of the physician-patient privilege, and the court held a hearing. Glidden's hearing testimony was consistent with his affidavit.

After the hearing, the court denied the request for the medical records "based upon the paucity of evidence supporting probable cause as to serious bodily injury for the seizure of the medical records." The State moved to reconsider, arguing that the court had already found probable cause, and that the remaining issue for determination was whether the State had demonstrated "essential need" for the records. See In re Search Warrant, 160 N.H. at 226. In ruling on the State's motion, the court found that the evidence "did not provide a compelling reason to invade the confidentiality of the patient," ruling that "[t]he attenuated presentation as to the probability of serious bodily injury is such that the Court denies the State's request."

As an initial matter, we conclude that the State established probable cause to obtain the medical records. Glidden provided sufficient facts and circumstances to demonstrate a substantial likelihood that the Concord Hospital records include evidence of W.M.'s injuries resulting from the accident. See Zwicker, 151 N.H. at 185. In addition, we conclude that the State demonstrated "essential need" for the records by proving both that the information is unavailable from other sources and that there is a compelling justification for its disclosure. See In re Search Warrant, 160 N.H. at 226.

The State seeks the medical records to establish an element of a felony criminal offense: failure to report after an accident, see RSA 264:25 (2014), which is a class B felony when bodily injury occurs, see RSA 264:29 (2014). The investigation of felonies and the search for relevant evidence constitute a compelling justification to support invasion of the physician-patient privilege. In re Grand Jury Subpoena (Medical Records of Payne), 150 N.H. 436, 442 (2004).

In determining whether the information is available from other sources, we consider whether the alternative evidence would be admissible at trial, whether it would be sufficient to overcome a motion for directed verdict, and whether the State has made adequate efforts to investigate alternative sources. In re Grand Jury Subpoena, 150 N.H. at 442-43. The police learned of W.M.'s injuries from third parties, whose hearsay statements would likely be inadmissible at trial, thereby leaving the State's case vulnerable to a motion for directed verdict. See id. at 443 (noting that to survive a motion for directed verdict, evidence must be sufficient to support a finding of guilt beyond a reasonable doubt). The police made efforts to obtain evidence of W.M.'s injuries from W.M. and his family, but they were uncooperative. Accordingly, we conclude that the State proved that the information is unavailable from other sources and that the trial court erred in denying the State access to the medical records. See In re Search Warrant, 160 N.H. at 226.

Reversed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**

3